UNITED STATES, Appellee

v

HAROLD WEBB, Corporal,
U. S. Marine Corps, Appellant

8 USCMA 70, 23 CMR 294

71

No. 9113

Decided June 21, 1957

*Commander David Bolton,* USN, argued the cause for Appellant, Accused. With him on the brief were *Commander Earl C. Collins,* USN, and *Lieutenant Commander George E. Berry, Jr.,* USNR.

*First Lieutenant Daniel P. Reardon, Jr.,* USMCR, argued the cause for Appellee, United States.

### Opinion of the Court

GEORGE W. LATIMER, Judge:

I

The accused was tried by a general court-martial upon twenty-two specifications underlying a charge of violating Article 134, Uniform Code of Military Justice, 10 USC § 934. The specifications alleged in the first thirteen instances that he wrongfully in-

duced other named persons to use marihuana, heroin, and opium; in the next eight instances, that he had illegally sold narcotics to certain named persons; and, finally, that he knowingly used habit-forming drugs. He pleaded not guilty to the charge and all specifications thereunder. At the close of the Government's case, a finding of not guilty was rendered as to six of the specifications, and one additional specification was withdrawn by direction of the convening authority. The court-martial found him guilty of nine of the specifications, with certain exceptions and substitutions of no importance to this decision. He was sentenced to a dishonorable discharge, confinement at hard labor for eight years, total forfeitures, and reduction in rank from corporal to private. The convening authority disapproved the guilty findings upon two of the inducement specifications and reduced the sentence to confinement at hard labor for four years, otherwise approving the sentence. The board of review affirmed the findings of guilty only as to five specifications and reduced the period of confinement to three years.

In view of the nature of the issues, the facts tending to establish the substantive offenses are immaterial, so we mention only those necessary to our decision. The most important error assigned by the accused before the board of review was to the effect that one of the officers sitting in the court had acquired a book entitled, "Narcotics, U.S.A.," and examined it during the trial prior to the time the court-martial arrived at its findings. It was thus contended that the member had obtained evidence from an outside and unauthorized source to the detriment of the accused. The alleged irregularity was first presented after trial by a letter from defense counsel to the convening authority, pursuant to Article 38(c), Uniform Code of Military Justice, 10 USC § 838. Attached to the letter were two affidavits, and defense counsel requested that both the letter and affidavits be appended to the record for consideration by subsequent reviewing authorities. The record does not show specifically that the convening au-

thority considered the irregularity mentioned in the letter, but he did not append the documents to the record that was transmitted to the board of review. However, his staff legal officer, in his written review, cavalierly mentioned the issue accused had sought to raise but brushed it off with little comment. The board of review, relying on its Uniform Rules of Procedure, Rule IX paragraph F, which precludes consideration of matters outside the record of trial, sustained the Government's objection to consideration of the issue. However, it stated that its action was without prejudice to accused's rights to petition for a new trial pursuant to Article 73, Uniform Code of Military Justice, 10 USC § 873.

Accused then sought relief in this Court, and we granted his petition for review of the board's decision, restricting arguments to an issue of whether the conduct of the court member was to his substantial prejudice. Implicit in that issue is whether the error, if any, is before us properly for review.

II

From the foregoing statement of facts, it is obvious that we are met at the threshold by the board of review's ruling that it could not pass on the question raised by the letter and affidavits. The board reasoned that the issue was not in the record properly and that the accused was limited in relief to a petition for a new trial in accordance with Article 73, supra, and paragraph 109, Manual for Courts-Martial, United States, 1951. But the existence of the latter procedural right is no justification for a holding that the course defense counsel pursued was misconceived, particularly when Article 73 limits the use of a petition for a new trial to boards of review, Judge Advocates General, and this Court, and when Article 38(c) authorizes defense counsel to raise objection to errors prejudicially affecting an accused by attaching a brief on such matters to the record to be considered before findings and sentence are approved by reviewing authorities. Utilizing his first opportunity, defense counsel sought correc-

tive action at the convening authority level, and the staff judge advocate's review shows that the affidavits · were available to the reviewing authority for consideration. It is good law that issues which go to the very ▪ heart of a fair trial should be raised at the first opportunity and that irregularities which, for good and sufficient reason, were not considered during the trial proper should be called to the attention of the convening authority so that he can weigh them for their impact on the findings and sentence.

While the Code gives to an accused the right to petition for a new trial after the case clears· the ▪ convening authority, it is silent as to the method by which he can obtain relief before the first reviewing officer. However, this is not a question of first impression, for a similar problem was presented to us in United States v Walters, 4 USCMA 617, 16 CMR 191. In that instance, the judges of this Court parted on their reasons for considering post-trial proceedings as part of the record on appeal, but the Court unanimously held that the documents which reflected irregularities during trial were before us for consideration. Here, as there, the error alleged occurred during the last phase of the hearing, it was a substantial departure from ordinary procedure, the initiating papers stated the substance of the grievance, and the attached affidavits furnished a prima facie showing in support thereof. Once the convening authority was apprised of the court member's alleged misconduct by that much of a showing, it was his duty to pay heed to the request. The Manual enumerates the matters he must determine before he can approve the findings and sentence. Subparagraph (e) of paragraph 86b (1) is a general clause which requires that he determine there are no errors in the proceedings which materially prejudice the substantial rights of the accused. This reviewing officer could not possibly have concluded that this accused was accorded a fair trial without finding that the activities of the court member were regular or nonprejudicial. It

should go without saying that any ruling in that regard must be preserved for appellate review.

In the present setting, it is of no moment whether Judge Ferguson adopts the majority view set out in United States v Walters, supra, or concurs with the concepts relied on by the author of ·this opinion, for under either theory this issue was raised sufficiently before the convening authority to require consideration by the board of review. Preliminary evidence in the form of affidavits was furnished, both sides could have supplemented the evidence shown therein, and, as a matter of fact, there was ample time to have made a full and complete inquiry as the sentence was adjudged on October 20, 1955, and the convening authority did not act until February 1, 1956. Because the record is silent, we must assume that the convening authority summarily denied the relief, but if the base for that assumption should fail, then he was clearly wrong in not requiring a full development of the misconduct. Obviously, once it is determined that the matter was properly incorporated in the record for action by the convening authority, the board of review erred in not reviewing his ruling on appeal.

### III

Having concluded the issue was raised in a legal and acceptable manner and should be reviewed by us, we are required to consider the facts alleged in the affidavit to decide whether the accused is entitled to relief. In the first of the attached affidavits, the post librarian deposed that, according to her records, the officer involved had drawn a book, "Narcotics, U.S.A.," from the post library, on October 19, 1955. It is significant that on this particular day, the taking of evidence in the case was completed, but final arguments were scheduled for the following morning. The second affidavit was executed by defense counsel, and in substance it stated: That on October 20, 1955, after findings and during the latter part of the presentation of evidence in extenuation and mitigation of punishment, he observed· that a book entitled, "Narcotics, U.S.A.," was lay-

ing on a railing in front of the court-martial bench; that immediately after the court recessed for lunch, he confirmed his observation by a close inspection of the book; that at that time he had no knowledge of how it happened to be in the courtroom or whether any of the members of the court had considered its contents; and that subsequently he was informed that Major McAllister procured the book from the post library and had examined it during the trial.

Two additional affidavits were later taken from court members, presumably at the convening authority's direction. They attest that the book was not used by them, and, to the best of their knowledge, it was not read by a court member during the trial. One of these affiants was the president of the court, and he further deposed that he recalled the book being in the courtroom and being mentioned by a witness during the course of the trial. Unfortunately, the only person who had firsthand information on the true situation has not spoken, for no affidavit of Major McAllister appears in the record. While presumably this void comes about because he was transferred from that command prior to the time the convening authority acted, the fact remains that movement does not make evidence unobtainable.

Reference to the book is found only once in the record of trial. It was made by one of the Government's witnesses for whom the foundation had been laid by the prosecution to testify as an expert. When he was recalled to the stand to correct his earlier testimony with regard to chemical tests for determining the presence of certain narcotics in suspected materials, defense counsel asked questions tending to cast doubt on his skill. In pursuing his inquiry, counsel asked the witness if he had ever heard of Dr. Victor H. Vogel, and in what connection. The witness answered he had heard of him in connection with a book upon which Dr. Vogel had collaborated. When asked the name of the book, the witness replied, "Narcotics, U.S.A." This testimony was of sufficient importance that it made an impression on the president of the court,

and, while the book was never introduced in evidence, it seems a legitimate inference that Major McAllister acquired the book from the post library for self-educational purposes and no doubt to help him decide the nature of a substance admitted into evidence as one of the known habit-forming drugs.

The question confronting us on this facet of the controversy is whether the court-martial member was guilty of misconduct. It is basic legal learning that court-martial members are not allowed to seek facts or opinions from outside sources which will control or influence their findings on issues being tried before them. During such time, they are to be insulated, so far as is reasonably possible, from receiving testimony not produced in court. The rule as to military court members is no different in that regard from the one controlling their civilian counterparts, the jurymen, and it is well set out in Mattox v United States, 146 US 140, 36 L ed 917, 13 S Ct 50. See also 53 Am Jur, Trial, §§ 894–898. This Court has time and again treated many variations of the principles dealing in the field of unlawful communications with court members. To illustrate a few instances, in United States v Guest, 3 USCMA 147, 11 CMR 147, we castigated the staff judge advocate for consulting with the president of the court on the issues of the case during a recess and for furnishing the latter a reported case in point during trial. In addition, we criticized the president for obtaining information not presented in the formal hearing. We there said:

". . . The accused is entitled to a fair and impartial trial by a court uninfluenced from outside sources. Every officer serving on a court should know that it is not in keeping with the spirit of the Uniform Code of Military Justice for a member of a court-martial to discuss with unauthorized persons a case which is pending and which he must decide. His sources of information are those which are recognized as part of the military judicial system and his decisions should be predicated upon information obtained in the

75

courtroom. We hope the caveat herein expressed will have the desired effect and that courts-martial will in the future be unmolested by self-appointed friends of the court."

In United States v Chaput, 2 USCMA 127, 7 CMR 3, and United States v Lowry, 4 USCMA 448, 16 CMR 22, we reversed the findings and sentences because law officers permitted court members to consult reported cases to aid them in their deliberations. Presently we are confronted with a form of self aid for, on his own initiative, a court member has researched outside authorities on the lore of the crime of which the accused stands convicted. The caveats issued in the foregoing cases would quite obviously proscribe that conduct. The concept is fundamental that an accused has the right to an impartial trial, and that means the triers of fact must predicate their findings and sentence solely upon information presented in the courtroom. Learned treatises on subjects relevant to the matter at issue are generally not even admissible in evidence, since such "evidence purports to employ testimonially a statement made out of court by a person not subjected to cross-examination; i.e. purports to violate the fundamental doctrine . . . of the *Hearsay rule*." Wigmore, Evidence, 3d ed, § 1690. If, therefore, as it appears in the post-trial affidavits, Major McAllister privately consulted a scientific text on the subject of narcotics, he acquired material help on a critical issue outside the courtroom arena, and his action in so doing constituted misconduct. Our next step, therefore, is to determine the legal effect of this illadvised venture into the area of scientific writings.

In the case at bar, we need not consider whether the accused has the burden of showing prejudice or the Government the duty of showing its absence. To us, contrary to the finding of the board of review, prejudice is apparent. On the first day of the trial, the expert witness, who left something to be desired in his expertise in the field of narcotics, had identified a substance as marihuana, basing his conclusion upon his physical and chemical analyses. It was in regard to this particular substance that he returned to the stand two days later to correct his earlier testimony in regard to the chemical test employed for determining its presence. The test he related when he first took the witness stand—he admitted in his second testimony—was used to detect the presence of barbiturates, and not marihuana. Some doubt was cast on his qualifications and credibility as an expert by that admission and by other cross-examination, yet it is entirely probable that the use of the outside text rehabilitated him in the eyes of the court member. In net effect, what was uncertain became fixed in the mind of the offending member. It could well be argued that the cumulative testimony of other witnesses added little to the Government's showing, for they used the nomenclature of the dope addict, and much of their testimony depended upon the accuracy of the analyses made by the expert. But, in all events, the work of a recognized expert would be particularly influential in this type of case, and his opinions would be given much weight by a fact finder. As happens all to frequently, we do not have the member's affidavit as to his purpose in withdrawing the book from the post library or his use of its contents thereafter. He alone could shed considerable light upon this confused situation, but, rather than learn the true facts, the representatives of the Government appear to be entirely satisfied to carry on in darkness. We are not, and when the incident is exposed to light, it bespeaks prejudice.

That brings us to the question of waiver by trial defense counsel. Since the book's presence in the courtroom was discovered by him before the conclusion of trial and he took no immediate action, it is argued that accused cannot complain on appeal. That argument overlooks several evidentiary matters of importance. Trial defense counsel had no way of finding out about the irregularity until he noticed the book and its location. At that time, the accused had been convicted and, therefore,

the only subject before the court was sentence. At worst, it could not be a waiver in findings but, more to the point, counsel should be allowed some reasonable latitude to investigate what appeared at that time as only a suspicious circumstance. The first affidavit was obtained within one week, and all were prepared and forwarded to the convening authority before the record of trial was in his hands. Once sentence was passed, no decision of importance could be rendered until he was prepared to rule. While we have every desire to place on defense counsel a burden to move with dispatch, we find nothing in this record which points to negligence or delaying tactics. We, therefore, find against the contention that trial defense counsel failed to move timely in protecting his client's rights.

The decision of the board of review is reversed and a rehearing ordered.

QUINN, Chief Judge (concurring):

I think it important to emphasize that prejudice to an accused is ▬▬▬▬ ▬ presumed from the fact that a juror consulted "outside sources" for evidence bearing on the accused's guilt. The burden is then on the Government to overcome the presumption. Remmer v United States, 350 US 377, 100 L ed 435, 76 S Ct 425 (1956); Feld, A Manual of Courts-Martial Practice and Appeal, § 92, page 104. In other respects, I agree fully with the principal opinion.

FERGUSON, Judge (concurring):

I concur because I agree with the majority opinion that issues which go to the heart of a fair trial should be raised as soon as possible and that irregularities which, for good and sufficient reason, were not considered during the trial should be considered by the convening authority if they harmed the accused. To me, the form in which these irregularities are brought to his attention is of secondary importance to the subject matter. Since the matter in the instant care harmed the accused and was considered by the convening authority in making his decision, I believe that it is properly a part of the record and may be considered by the board of review and this Court.