UNITED STATES, Appellee

v

JOHNNY B. WOLFE, Sergeant, U. S. Army, Appellant

8 USCMA 247, 24 CMR 57

No. 9807

Decided September 13, 1957

*First Lieutenant Jerome H. Gerber* argued the cause for Appellant, Accused. With him on the brief was *Colonel James M. Scott.*
*Captain Thomas J. Nichols* argued the cause for Appellee, United States.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was brought to trial on charges of involuntary manslaughter and reckless driving in connection with a head-on collision between his car and another vehicle, which occurred when the accused turned into the opposite lane in order to pass the car in front of him. He was defended by a civilian lawyer, who was a member of the bar of the State of Kentucky, and the regularly appointed military counsel. A considerable amount of the testimony concerned the physical conditions at the scene of the collision. In addition, a number of photographs of the area were admitted in evidence.

At the close of arguments by counsel the court was recessed. It was then 11:15 a.m. The court reconvened at 1:00 p.m. Individual defense counsel and trial counsel made some additional arguments, and the law officer instructed the court-martial on the principles of law applicable to the case. At 1:30 p.m. the court members retired into closed session to deliberate on the

findings. Almost an hour later, the court-martial returned and. the president announced that it had found the accused guilty of the offenses charged. Evidence in mitigation was then presented, and the civilian defense counsel made a brief statement summarizing the facts. After further deliberation in closed session, the court-martial sentenced the accused to a dishonorable discharge, total forfeitures, and confinement at hard labor for two years.

Immediately upon announcement of the sentence, defense counsel asked for, and was granted, permission to question the court members on whether they had visited the scene of the collision "today or yesterday or at any time since this trial started." The president and another member of the court admitted that they had, separately and apparently independently, gone to the area. However, they met at the scene and each remained about ten minutes. The president said that he had gone to the site "to confirm what I already learned in court." He also said that he had been "confused" by the variance between the photographic exhibits and the testimony of a defense witness, and he "wanted to see" the place himself. The other member testified that he had not learned anything that he did not already know from the evidence in the case. A third member of the court testified that he passed the place in his car, but did not stop.

Asked by the law officer when he had first learned of the unauthorized view by the court members, defense counsel replied that the matter had come to his attention about ten minutes to one, which was during the noon recess. Thus, the view was known to defense counsel before the final closing arguments, the law officer's instructions, and both the findings and the sentence. Despite his examination of the court members, defense counsel asked for no relief. However, on review of his case by a board of review, the accused contended that he was denied military due process because of the unauthorized view taken by the court members. The board of review held that the accused had waived the error, and, therefore, affirmed the conviction. The accused petitioned this Court for further review, and we granted the petition.

American courts are divided on the nature and function of a view. Some regard it as merely a means to acquaint the fact finders with the scene or the object viewed, and thus enable them better to understand the testimony adduced in the courtroom. From this standpoint, the view is not part of the trial and does not amount to the taking of testimony. Other courts hold that the knowledge derived from a view is carried in the fact finder's mind and may influence his judgment. On that assumption, the view is tantamount to the taking of evidence. See Synder v Massachusetts, 291 US 97, 78 L ed 674, 54 S Ct 330, and cases cited therein. The difference is important in regard to the accused's right to be present at the view, and in an evaluation of the effect of the view on the fact finders. In this case, however, we need not concern ourselves with the difference.

The view was taken without the order of the court. Consequently, the court members who took the view were guilty of misconduct. But since the view was unauthorized, it cannot be considered a part of the regular proceedings against the accused. Cf. United States v Walters, 4 USCMA 617, 16 CMR 191. The effect of the view must, therefore, be measured by its possible impact on the verdict.

Error exists whenever information about the case improperly comes to the attention of the fact finders. It is presumed that such information is prejudicial to the accused. United States v Webb, 8 USCMA 70, 23 CMR 294. However, the presumption is rebuttable, and it can be completely dispelled by proof that the improper evidence could not have harmed the accused. United States v Linder, 6 USCMA 669, 20 CMR 385; United States v Adamiak, 4 USCMA 412, 15 CMR 412. Whether the post-sentence testimony by the court members here is sufficient to show that the view had no measurable impact upon them in their deliberations on either the findings or the sentence need not

concern us. Cf. Roberts v United States, 60 F2d 871, 872 (CA 4th Cir) (1932); People v Strause, 290 Ill 259, 125 NE 339. The defense tactics at the trial preclude raising the issue on appeal.

A criminal trial is not a guessing game. An accused, alike with the Government, must deal fairly ▮ with the court. He cannot withhold information of matters affecting the trial on the chance that they may have a favorable effect, and then, when disappointed, complain. Even rights guaranteed by the Constitution are considered surrendered when the accused knowingly declines at the trial to avail himself of them. United States v Holton, 227 F 2d 886 (CA 7th Cir) (1955), cert den 350 US 1006, 100 L ed 868, 76 S Ct 650; United States v Fisher, 4 USCMA 152, 15 CMR 152. We referred to this rule in United States v Walters, 4 USCMA 617, 628, 16 CMR 191, in the following language:

". . . Certainly we do not propose to permit defense counsel to remain silent and to speculate cunningly as to a court's findings, if he has knowledge of facts suggesting that the court engaged in 'proceedings' during a purported recess or adjournment."

Here, defense counsel knew of the improper conduct by the court members before the final arguments and the instructions, and before the findings and the sentence. Nevertheless, he remained silent. It may be that he believed the view would benefit the defense. Some support for this possibility appears from the fact that he did not move for appropriate relief, even after he brought out the matter. Whatever the reason for keeping silent, it cannot be denied that defense counsel knowingly and deliberately withheld disclosure of the view until the case was completed and the findings and the sentence were determined. Such conduct strikes us as more than uninformed acquiescence in an unauthorized proceeding. It strongly indicates a calculated determination to say and to do nothing until the final result of the trial became known, and then only if it was unfavorable to the accused. Under such circumstances, the accused cannot now claim that he was prejudiced by the unauthorized conduct of the court members. United States v Hurt, 8 USCMA 224, 24 CMR 34; United States v Thomas, 3 USCMA 161, 11 CMR 161; United States v Smith, 2 USCMA 440, 9 CMR 70. Nor can he now contend that the court members were disqualified to continue as such because of the personal knowledge obtained at the view. See Ryan v United States, 191 F 2d 779 (CA DC Cir) (1951).

Before concluding our opinion, a procedural matter merits mention. The Government asked for, and ▮ was granted, an extension of time within which to file its final brief within Rule 41 of our rules. Five days after the expiration of the extended time, a brief was submitted together with a motion for leave to file the same *nunc pro tunc*. The motion was denied with leave to renew at the time of the hearing. No further application was made at that time. Accordingly, we did not consider the Government's brief in our review of the case.

The decision of the board of review is affirmed.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

I would concur outright if it were not for the views expressed in the last paragraph of the Court's opinion. They appear to me to be a criticism of Government counsel for failure to file a brief within the time allowed. In this instance, for reasons which are unnecessary to be herein set forth, I prefer not to be critical.