UNITED STATES, Appellee

v

WILLIAM KIDD, Jr., Recruit, U. S. Army, Appellant

13 USCMA 184, 32 CMR 184

No. 15,652

July 13, 1962

*First Lieutenant George C. Ryker* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Ralph W. Wofford, Captain Vernon C. Maulson,* and *First Lieutenant Alonzo F. Davis.*

*First Lieutenant Carl F. Wrench* argued the cause for Appellee, United States. With him on the brief was *Major Francis M. Cooper.*

## Opinion of the Court

**Kilday, Judge:**

Recruit William Kidd, Jr., the accused, was tried by general court-martial convened by the Commanding General, Second Infantry Division, Fort Benning, Georgia. Contrary to his plea of not guilty, he was convicted of conspiracy to commit extortion, four specifications of extortion, and seven specifications of assault, in violation of Articles 81, 127, and 128 of the Uniform Code of Military Justice, 10 USC §§ 881, 927, and 928, respectively. He was sentenced by the court-martial to confinement at hard labor for five years, forfeiture of all pay and allowances, and to be dishonorably discharged from the service. Thereafter the convening authority and a board of review in the office of The Judge Advocate General

of the Army affirmed the findings and the adjudged sentence, except that the board reduced the period of confinement to one year.

This Court granted accused's petition for review on two assignments, the first of which requires that we determine:

> Whether the conviction of conspiracy under Charge I is barred by the acquittal of the alleged co-conspirator.

The issue which is determinative of the appeal renders it unnecessary to set out the facts and circumstances giving rise to this case. It is sufficient to point out that the present appellant Kidd was alleged, in the instant prosecution, to have conspired with one Recruit Richard N. Wright, and the latter was the sole alleged co-conspirator. In his advice to the convening authority in the case at bar, the staff judge advocate invited attention to the fact that Wright, who had been tried separately by another general court-martial subsequent to the trial and conviction of our present appellant, was acquitted of having conspired with the latter to commit the offense of extortion.

Under the conspiracy count, the appellant Kidd was convicted of a single specification alleging, in pertinent part:

> "In that Recruit E-1 William Kidd Jr, . . . did, at Fort Benning, Georgia, on or about 21 May 1961, conspire with Recruit E-1 Richard N Wright, to commit an offense under the Uniform Code of Military Justice, to wit: extortion, and in order to effect the object of the conspiracy, the said Recruit E-1 William Kidd Jr did, with intent unlawfully to obtain $2.00 from each, communicate to Recruit Samuel J Hanners, Recruit James W Campbell, Recruit Alvin J Baker, and Recruit Donald R Lynn, threats to do them bodily harm."

That finding was returned by the instant court-martial after the specification was amended at trial counsel's behest, at the close of the Government's case in chief, to delete from the allegations the name of co-conspirator Wright as a participant in the overt acts, and to delete the names of three of the recruits against whom threats were originally alleged. The modification may be noted by comparing the above-quoted finding with the following specification upon which accused Kidd was arraigned at the outset of his trial:

> "In that Recruit E-1 William Kidd Jr, . . . did, at Fort Benning, Georgia, on or about 21 May 1961, conspire with Recruit E-1 Richard N Wright, to commit an offense under the Uniform Code of Military Justice, to wit: extortion, and in order to effect the object of the conspiracy, the said Recruit E-1 William Kidd Jr and Recruit E-1 Richard N Wright, did, with intent unlawfully to obtain $2.00 from each, communicate to Recruit Samuel J Hanners, Recruit Richard A Ziegler, Recruit Henry L May, Recruit James W Campbell, Recruit Alvin J Baker, Recruit James H Warner, and Recruit Donald R Lynn, threats to do them bodily harm."

The record before us also contains a general court-martial order concerning the conspiracy charge against Wright, upon which he was tried, subsequent to appellant Kidd's court-martial, by another general court convened at Fort Benning, Georgia, by the same convening authority. Such order indicates that at his court-martial Wright was found not guilty, on the merits, of the following specification of conspiracy:

> "In that Recruit E-1 Richard N Wright, . . . did, at Fort Benning, Georgia, on or about 21 May 1961, conspire with Recruit E-1 William Kidd Jr, to commit an offense under the Uniform Code of Military Justice, to wit: extortion, and in order to effect the object of the conspiracy, the said Recruit E-1 Richard N Wright did, with intent unlawfully to obtain $2.00 from each, communicate to Recruit Samuel J Hanners, Recruit Richard A Ziegler, and Recruit Henry L May, threats to do them bodily harm."

Before this Court accused asserts that the acquittal of Wright of the conspiracy bars his own conviction, in that

one person cannot conspire by himself. In support of this contention, appellate defense counsel rely on United States v Nathan, 12 USCMA 398, 30 CMR 398.

Appellate Government counsel seek to distinguish *Nathan,* supra, on the grounds that there the only two alleged co-conspirators had been acquitted *prior* to the trial of Nathan, while in this case the only other alleged conspirator was acquitted *after* the conviction of appellant; and that the specification in Wright's case, and of which he was acquitted, alleges overt acts different than those alleged in the conspiracy of which the appellant was convicted, *i. e.,* threats to different people. Further, in support of their position appellate Government counsel cite United States v Gordon, 2 USCMA 632, 10 CMR 130; and United States v Whitman, 3 USCMA 179, 11 CMR 179.

We point out that neither *Gordon* nor *Whitman,* both supra, involved a charge of conspiracy. Those cases are authority for the proposition only that under Article 66(c) of the Uniform Code of Military Justice, 10 USC § 866, a board of review is limited to the record presented to it, and cannot consult the record in companion cases involving extraneous issues to supplement the record before it. Unlike those cases, the instant proceeding involves a charge of conspiracy as to which the fate of a sole alleged co-conspirator is material, and it appears affirmatively from the record presented to us and to the board of review that the only other alleged conspirator was, subsequent to the conviction of Kidd, acquitted, on the merits, by a general court-martial. We, therefore, conclude that the substantive question urged upon us by the defense in this appeal is before us for consideration and decision.

It would be helpful to review the nature of the crime of conspiracy. At common law that offense consisted of a combination between two or more persons to accomplish a criminal or unlaw-

ful act, or to do a lawful act by criminal or unlawful means. Also at common law, guilt of conspiracy was incurred by the combination for a forbidden purpose, no additional or "overt act" being required for conviction. Perkins, Criminal Law, pages 528–31 (1957); Clark and Marshall, A Treatise on the Law of Crimes, 6th ed, § 9.00 at page 489; 1 Bishop, A Treatise on Criminal Law, 9th ed, §§ 432, 434, 592.

However, the necessity for an overt act is generally prescribed by modern statutes. This is true in Federal practice by reason of Title 18, Section 371, United States Code, which includes in the definition of conspiracy the requirement that "one or more of such . . . [conspirators] do any act to effect the object of the conspiracy." The statute under which the present accused was tried, Article 81, Uniform Code of Military Justice, supra, provides the same requirement. It reads as follows:

"Any person subject to this chapter who conspires with any other person to commit an offense under this chapter shall, if one or more of the conspirators does an act to effect the object of the conspiracy, be punished as a court-martial may direct."

Against that backdrop we pass on to consider the statement by this Court in *Nathan,* supra, that:

". . . In a conspiracy prosecution, it must be shown that at least two persons joined together in an illegal agreement. A judicial determination against the Government, whether in the same or in a separate action, that alleged co-conspirators are not part of the illegal agreement, eliminates those persons from partnership with the accused. If no other persons, known or unknown, are alleged to have conspired with the accused, the essential fact of agreement is missing and the accused cannot be convicted of conspiracy." [12 USCMA at page 399.]

We have again examined the holding in *Nathan,* and reaffirm the same. As

**187**

there stated, "A person cannot conspire with himself." It is ele- mentary that conspiracy requires the combination of two or more persons. "The impossibility of one person forming a combination with himself is too obvious for discussion." Perkins, Criminal Law, supra, page 537.

It seems equally clear that, in Federal law, the *acquittal on the merits* or discharge under circum- stances amounting to acquittal, of the one remaining co-conspirator, or all of the other alleged conspirators, results in the acquittal of the remaining one. The restrictive nature of the rule should be emphasized. The acquittal must be on the merits and not a mere termination of prosecution not amounting to an acquittal. Further, it must be an acquittal of all of the other alleged conspirators; if there be an allegation of unknown conspirators or other unacquitted alleged co-conspirators and evidence to show a combination with them, the rule does not apply.

There is striking unanimity in the precedents in Federal courts on this question. Feder v United States, 257 Fed 694 (CA 2d Cir) (1919); Miller v United States, 277 Fed 721 (CA 4th Cir) (1921); Williams v United States, 282 Fed 481 (CA 4th Cir) (1922); Grove v United States, 3 F2d 965 (CA 4th Cir) (1925); United States v Wray, 8 F2d 429 (ND Ga) (1925); De Camp v United States, 10 F2d 984 (CA DC Cir) (1926); Morrow v United States, 11 F2d 256 (CA 8th Cir) (1926); Bartkus v United States, 21 F2d 425 (CA 7th Cir) (1927); United States v Austin-Bagley Corporation, 31 F2d 229 (CA 2d Cir) (1929); Cofer v United States, 37 F2d 677 (CA 5th Cir) (1930); Didenti v United States, 44 F2d 537 (CA 9th Cir) (1930); Rosenthal v United States, 45 F2d 1000 (CA 8th Cir) (1930); Worthington v United States, 64 F2d 936 (CA 7th Cir) (1933); Farnsworth v Zerbst, 98 F2d 541 (CA 5th Cir) (1938); Thompson v United States, 227 F2d 671 (CA 5th Cir) (1955); United States v Masiello, 235 F2d 279 (CA 2d Cir) (1956); United States v Gordon, 242 F2d 122 (CA 3d Cir) (1957).

If there be conflict in the Federal cases they have not been called to our attention nor have we discovered the same. Appellate Government counsel seek to sustain this conviction on the authority of United States v Yarborough, 1 USCMA 678, 5 CMR 106. It should be pointed out that Chief Judge Quinn is the author of the opinion in that instance, as well as the decision in *Nathan*. In the latter case, the Chief Judge distinguished the holding in *Yarborough* as being confined to the peculiar facts of the case and the manner in which the offense was alleged, matters we shall discuss subsequently in this case. Suffice it to note at this juncture that we are aware of nothing in *Yarborough* which was intended as authority contrary to the long list of Federal cases we have cited herein, or the opinion in United States v Nathan, supra.

But appellate Government counsel also attempt to distinguish this case from *Nathan,* supra, in that there accused's co-conspirator was acquitted *prior* to his conviction, whereas in this case appellant's co-conspirator was acquitted *after* his conviction. In that connection, Miller v United States, supra, is referred to our attention. There the court said:

"The rule that each of two persons charged with conspiracy may be tried separately negatives the proposition that judgment on the conviction of one must be arrested until the other is tried." [277 Fed at page 726.]

Accordingly, it was deemed beyond the court's province to decide the effect of the possible future exoneration of an alleged co-conspirator.

Our task is not so simple. It is not only our province but our obligation to decide. We are referred to no authority that the order of trial of those accused of conspiracy in anywise affects the well-established rule that one cannot conspire with himself and that the acquittal on the merits of all of the alleged conspirators save one, results in

the acquittal of that one also. Therefore, when the record before us shows affirmatively that the sole other alleged co-conspirator has been acquitted on the merits, as this record indicates, we have no doubt reversal as to this appellant must follow.

This position is strengthened by United States v Fox, 130 F2d 56 (CA 3d Cir) (1942). In that case Fox and two others were charged with conspiracy. Fox entered a plea of guilty, and testified at two subsequent trials of his alleged co-conspirators. At each of those trials the juries were unable to agree on a verdict as to the pair, and subsequently *nolle prosequi* was entered as to each. Thereafter, Fox moved to vacate his plea, and for a vacation or modification of his sentence. His motions were denied and on appeal the denial was sustained. In a very well considered opinion the Circuit Court of Appeals affirmed, not on the order in which Fox was brought before the bar of justice, but upon the elementary ground that the alleged co-conspirators had not been acquitted on the merits. It is significant that the court did not reach its conclusion on the basis that the plea by Fox came before the *nolle prosequi* as to the others. It seems clear to us that persons accused of conspiracy may be tried separately and may have no control over the order in which they are tried. Miller v United States, supra. Therefore, they should not be deprived of the right to acquittal solely on that basis if, despite their earlier separate conviction, all other alleged conspirators have been acquitted of the offense.

But that is not the end of our inquiry. As noted earlier herein, the finding against appellant Kidd embraced overt acts as to Hanners, Campbell, Baker and Lynn. The specification of which Wright was acquitted at his subsequent court-martial included overt acts as to Hanners, Zeigler and May.

Appellate Government counsel, in their brief, assert:

". . . However, the specification to which the appellant points in Wright's case and of which he was acquitted alleges overt acts different than those alleged in the conspiracy of which the appellant was convicted, *i.e.*, threats to different people."

In that connection, the Government cites Dealy v United States, 152 US 539, 38 L ed 545, 14 S Ct 680 (1894). There, however, the Supreme Court had before it a case in which numerous counts were contained in the indictment, and accused was convicted of some of the counts, acquitted as to some, and *nolle prosequi* entered as to others. The Court said:

"In the case at bar the section of the statute under which this indictment was found requires not merely a conspiracy, but some act to carry into effect its object. . . . and a verdict of not guilty as to any one of the counts in this indictment is not necessarily a finding against any conspiracy, but only that the conspiracy and the overt act therein stated did not both exist, while a verdict of guilty upon any other count finds both the conspiracy and the overt act named therein. There is no conflict between the findings, and no force to this objection."

*Dealy* did not involve acquittal of co-conspirators, but only the accused's own acquittal on some counts. Obviously this is not the question before us. We entertain no doubt that the acquittal on some counts in an indictment will not vitiate a conviction of other counts therein which are complete in themselves as to allegation of both the conspiracy and the overt act.

Further, it should be borne in mind that the specification against Kidd was amended. It originally indicated both he and Wright were involved in the overt acts, and enumerated seven specified victims, including all involved in both Kidd's conviction and Wright's acquittal. It is to be noted there is no contention that a different conspiracy is involved, but merely different overt acts. That the latter claim alone is made, instead of an assertion of different conspiracies, is itself a material distinction. But, in addition, the force

of the argument of different acts is blunted by the fact that the original allegation herein involved both men in all overt acts.

Be that as it may, however, the offense charged is conspiracy, and under Article 81 of the Uniform Code, it is essential that one or more of the conspirators do an act to effect the object of the conspiracy. As pointed out hereinbefore, 18 USC § 371 is to the same effect, and notwithstanding early cases apparently subject to contrary construction, the Federal rule appears to be that the overt act is a part of the conspiracy. Thus, in Hyde v United States, 225 US 347, 359, 56 L ed 1114, 32 S Ct 793 (1912), the Supreme Court stated:

". . . The conspiracy, therefore, cannot alone constitute the offense. It needs the addition of the overt act. Such act is something more, therefore, than evidence of a conspiracy. It constitutes the execution or part execution of the conspiracy, and all incur guilt by it, or rather complete their guilt by it, consummating a crime by it cognizable then by the judicial tribunals, such tribunals only then acquiring jurisdiction."

However, the object of the conspiracy may be a number of wrongful acts, rather than a single wrongful act. Still the conspiracy remains the same unlawful combination. Even though the allegations charge different overt acts to different defendants, the question remains whether there was a single agreement to combine to commit all of the overt acts. If there is but one agreement to combine there is only one conspiracy even though there be many objects thereof. And such unlawful combination must involve more than one person; when all save a single alleged conspirator are acquitted of such a single conspiracy, his conviction, too, must fall.

In determining the terms of the conspiracy and its objects, the appellate court is not limited to the averments of the charge. Rather, the province of the appellate court is to determine the question on the whole record before it. In the military judicial system this Court has before it the entire record of trial and no bills of exception are necessary to present such matters.

In the case of Braverman v United States, 317 US 49, 87 L ed 23, 63 S Ct 99 (1942), Chief Justice Stone discussed the questions here involved. We quote from that opinion at considerable length because of the valuable collation of authorities it contains and with the realization that reports of the Supreme Court are not readily available to all persons concerned with the administration of military justice around the world:

"The question whether a single agreement to commit acts in violation of several penal statutes is to be punished as one or several conspiracies is raised on the present record, not by the construction of the indictment, but by the Government's concession at the trial and here, reflected in the charge to the jury, that only a single agreement to commit the offenses alleged was proven. Where each of the counts of an indictment alleges a conspiracy to violate a different penal statute it may be proper to conclude, in the absence of a bill of exceptions bringing up the evidence, that several conspiracies are charged rather than one, and that the conviction is for each. See Fleisher v United States ((CCA 6th) 91 F(2d) 404) supra; Schultz v Hudspeth (CCA 10th) 123 F (2d) 729, 730. But is is a different matter to hold, as the court below appears to have done in this case and in Meyers v United States ((CCA 6th) 94 F (2d) 433) supra, that even though a single agreement is entered into, the conspirators are guilty of as many offenses as the agreement has criminal objects.

"The gist of the crime of conspiracy as defined by the statute is the agreement or confederation of the conspirators to commit one or

190

more unlawful acts 'where one or more of such parties do any act to effect the object of the conspiracy.' The overt act, without proof of which a charge of conspiracy cannot be submitted to the jury, may be that of only a single one of the conspirators and need not be itself a crime. Bannon & Mulkey v United States, 156 US 464, 468, 469, 39 L ed 494, 496, 497, 15 S Ct 467; Joplin Mercantile Co. v United States, 236 US 531, 535, 536, 59 L ed 705, 707, 708, 35 S Ct 291; United States v Rabinowich, 238 US 78, 86, 59 L ed 1211, 1214, 35 S Ct 682, 42 Am Bankr Rep 255; Pierce v United States, 252 US 239, 244, 64 L ed 542, 546, 40 S Ct 205. But it is unimportant, for present purposes, whether we regard the overt act as a part of the crime which the statute defines and makes punishable, see Hyde v United States, 225 US 347, 357–359, 56 L ed 1114, 1122, 1123, 32 S Ct 793, Ann Cas 1914A 614, or as something apart from it, either an indispensable mode of corroborating the existence of the conspiracy or a device for affording a locus poenitentiae, see United States v Britton, 108 US 193, 204, 205, 27 L ed 701, 700, 2 S Ct 526, 531; Dealy v United States, 152 US 539, 543, 547, 38 L ed 545, 546, 548, 14 S Ct 680; Brannon & Mulkey v United States, supra (156 US 469, 39 L ed 496, 15 S Ct 467); Hyde v Shine, 199 US 62, 76, 50 L ed 90, 94, 25 S Ct 760; Hyde v United States, supra (225 US 388, 56 L ed 1134, 32 S Ct 793, Ann Cas 1914A 614); Joplin Mercantile Co. v United States (236 US 531, 59 L ed 705, 35 L ed 291) supra.

"For when a single agreement to commit one or more substantive crimes is evidenced by an overt act, as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

"The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for 'The conspiracy is the crime and that is one, however diverse its objects.' Frohwerk v United States, 249 US 204, 210, 63 L ed 561, 565, 39 S Ct 249; Ford v United States, 273 US 593, 602, 71 L ed 793, 47 S Ct 531; United States v Manton (CCA 2d) 107 F (2d) 834, 838. A conspiracy is not the commission of the crime which it contemplates, and neither violates nor 'arises under' the statute whose violation is its object. United States v Rabinowich, supra (238 US 87–89, 59 L ed 1214, 1215, 35 S Ct 682, 42 Am Bankr Rep 255); United States v McElvain, 272 US 633, 638, 71 L ed 451, 453, 47 S Ct 219; see United States v Hirsch, 100 US 33– 35, 25 L ed 539, 540. Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes. See Blockburger v United States, 284 US 299, 301–304, 76 L ed 306, 307–309, 52 S Ct 180; Albrecht v United States, 273 US 1, 11, 12, 71 L ed 505, 510, 511, 47 S Ct 250. The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute, § 37 of the Criminal Code [Section 88 of Title 18, USC, 1940 ed—a precursor of the present conspiracy statute, 18 USC § 371]. For such a violation only the single penalty prescribed by the statute can be imposed."

We observe that in *Braverman,* supra, the objects of the conspiracy were violative of several statutes while here the object of the conspiracy is extortion from several persons. We perceive no distinction. The record before us does not contain any evidence to support the existence of more than one conspiracy. The Government does not

contend there was more than one conspiracy but points out there were different overt acts. This record indicates that the one agreement, constituting the conspiracy, had as its object extortion from all of the individuals named in the specifications against both accused Kidd and Wright.

The conclusion we reach as to the conspiracy renders it unnecessary to consider the remaining assignment of error. The decision of the board of review is reversed and Charge I and its specification are dismissed. The record will be returned to The Judge Advocate General of the Army for submission to a board of review for reassessment of the sentence on the basis of the remaining offenses.

Judge FERGUSON concurs.

QUINN, Chief Judge (concurring):

Essentially, the problem before us is application of the doctrine of collateral or unilateral estoppel which is part of the larger principle of *res judicata*. The doctrine was explained by the Court of Appeals of New York in a civil case as follows:

". . . Where a full opportunity has been afforded to a party to the prior action and he has failed to prove his freedom from liability or to establish liability or culpability on the part of another, there is no reason for permitting him to retry these issues.

∗ ∗ ∗ ∗ ∗ ∗

"It will be seen, therefore, that the fact that a party has not had his day in court on an issue *as against a particular litigant* is not decisive in determining whether the defense of *res judicata* is applicable.

". . . The unilateral character of the estoppel in such cases is warranted by the policy of the doctrine of *res judicata*—that there be an end to litigation.

∗ ∗ ∗ ∗ ∗ ∗

". . . in determining the applicability of the doctrine of *res judicata* as a defense, the test to be applied is that of 'identity of issues.' " [Israel v Wood Dolson Company, 1 NY 2d 116, 134 NE 2d 97 (1956).]

The principle of *res judicata* is applicable in criminal prosecutions as well as in civil proceedings. United States v Hooten, 12 USCMA 339, 30 CMR 339. Logically, therefore, the subsidiary doctrine of unilateral estoppel should be similarly applicable. Although not labelled as such, the form in which we phrased the question on appeal in the *Nathan* case (12 USCMA 398, 30 CMR 398) indicates that the doctrine has a place in the criminal law. We asked: "Can the Government . . . deny the truth and the validity of what has been judicially determined in a prosecution to which . . . [it was a party]?" And we answered that the "judicial determination" that a particular party is not a member of an alleged conspiracy, "whether in the same or in a separate action," is binding upon the Government. United States v Nathan, 12 USCMA 398, 399, 30 CMR 398. At the same time, certain difficulties inherent in the doctrine indicate the need to guard against uncritical application. See Thornton, "Further Comment on Collateral Estoppel," 28 Brooklyn Law Review 250 (1962).

The need for caution leads me to express some reservations about accepting, as the majority do, the general verdict of acquittal in the *Wright* case (CM 406504), as an irrefutable determination that Wright did not participate in the conspiracy with the accused. The verdict itself does not exclude the possibility that Wright admitted the agreement, but denied the overt act alleged in the specification. See United States v Hooten, supra. Enough of the *Wright* case is before us to justify examination of the record of trial in that case for the specific issue submitted to and decided by the court-martial. The record there leaves no doubt whatever that the court-martial found Wright was not a conspirator. The overt acts alleged in the conspiracy specification in Wright's case were also charged as substantive counts; the court-martial acquitted Wright of conspiracy, but convicted him of three of the four substantive acts.

192

Generally, estoppel is based upon a matter previously determined in a proper judicial proceeding. Had Wright been acquitted before the accused was tried and convicted, the doctrine would be clearly applicable, and the accused's conviction here would have to be set aside. United States v Nathan, supra. However, Wright was acquitted *after* the accused's trial. Until the Wright verdict, the proceedings against the accused were unimpeachable. On what basis, then, can the Wright findings be considered in determining the validity of the accused's antecedent conviction? If the accused had filed a petition for new trial, Wright's acquittal certainly constitutes new evidence which would drastically affect the findings in this case and therefore justify granting the petition. Article 73, Uniform Code of Military Justice, 10 USC § 873; United States v Thomas, 3 USCMA 161, 11 CMR 161. However, the matter was considered below by the convening authority and, for all practical purposes, has become part of the record in this case. Therefore, we may properly disregard form and directly consider the substance of the issue, since there is no doubt about Wright's acquittal of the conspiracy charge. United States v Webb, 8 USCMA 70, 23 CMR 294. In view of the judicial determination that Wright did not conspire with the accused, the conspiracy charge, which alleges an agreement only between Wright and the accused, becomes a legal impossibility. United States v Nathan, supra. I therefore agree that under the circumstances the charge must be dismissed.