UNITED STATES, Appellee,

v.

Private Richard L. WITHERSPOON, Jr.,
U.S. Army, Appellant.

No. 42,345.
CM 439581.

U.S. Court of Military Appeals.

Sept. 6, 1983.

For Appellant: *Captain Judson W. Roberts* (argued); *Major Raymond C. Ruppert, Captain Joseph A. Russelburg* (on brief); *Colonel Edward S. Adamkewicz, Jr., Colonel William G. Eckhardt,* and *Major Lawrence F. Klar.*

For Appellee: *Captain John J. Park, Jr.* (argued); *Colonel R.R. Boller, Lieutenant Colonel John T. Edwards, Captain Kenneth H. Clevenger* (on brief); *Major Joseph A. Rehyansky.*

*Opinion*

FLETCHER, Judge:

Subsequent to affirmance by the United States Army Court of Military Review of his conviction by general court-martial,[1] we granted appellant's petition on the following issue:

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT IN HOLDING THAT THE IMPROPER ACTION OF A COURT MEMBER (CAPTAIN PAULSEN) IN VISITING THE SCENE DESCRIBED IN APPELLANT'S TESTIMONY AND RELYING UPON INFORMATION ADVERSE TO APPELLANT OBTAINED AS A RESULT OF HIS UNAUTHORIZED VIEWING DURING DELIBERATIONS ON FINDINGS DID NOT PREJUDICE THE APPELLANT BECAUSE CAPTAIN PAULSEN COULD HAVE OBTAINED THE SAME INFORMATION FROM OTHER COURT MEMBERS.

After close review of the events that occurred during the trial and conviction of this accused, we conclude that no prejudice accrued to him and, as a result, affirm the findings below.

This was a highly contested case of rape. Among other contested facts was that of the location of the rape. Appellant claimed that his act of sexual intercourse occurred while the car was parked near the Officers Club and the family housing area. Complainant, on the other hand, testified that she had been raped at a more remote location. With respect to the granted issue in this case, we are called upon to answer two questions: First, was the staff judge advocate's submission of affidavits from court members to the convening authority an appropriate procedure for deciding this question? Second, was an unauthorized view of the scene of the crime by one court member prejudicial to the accused?

As a general rule, jurors cannot "impeach their verdict, with respect to matters which essentially inhere therein." *United States v. Bourchier*, 5 U.S.C.M.A. 15, 27, 17 C.M.R. 15, 27 (1954). *See United States v. West*, 23 U.S.C.M.A. 77, 48 C.M.R. 548 (1974); *United States v. Hance*, 10 M.J. 622 (A.C.M.R.1980). Exceptions exist when extraneous information has been improperly considered. *See, e.g., United States ex rel. Owen v. McMann*, 435 F.2d 813 (2d Cir.1970), *cert. denied*, 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971); *United States ex rel. DeLucia v. McMann*, 373 F.2d 759 (2d Cir.1967). *See also United States v. Bishop*, 11 M.J. 7 (C.M.A.1981). This general principle is now part of Mil.R.Evid. 606(b), which provides:

Upon an inquiry into the validity of the findings or sentence, a member may not testify as to any matter or statement occurring during the course of the deliberations of the members of the court-martial or to the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings or sentence or concerning the member's mental process in connection therewith, except that a member may testify on the question whether extraneous prejudicial information was improperly brought to the attention of the members of the court-martial, whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence. Nor may the member's affidavit or evidence of any statement by the member concerning a matter about which the member would be precluded from testifying be received for these purposes.

It is clear that extra-judicial information can prejudice a case and require reversal.

1. At his trial by general court-martial at Fort Ord, California, appellant was convicted of rape, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. His approved sentence included a bad-conduct discharge, confinement at hard labor and partial forfeitures for 2 years, and reduction to the lowest enlisted grade. The approved sentence was affirmed by the United States Army Court of Military Review. *United States v. Witherspoon*, 12 M.J. 588 (A.C.M.R.1981).

*See Parker v. Gladden,* 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966) (bailiff informed jurors he believed accused was guilty); *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) (newspaper publicity); *United States ex rel. Owen v. McMann, supra* (personal information about accused's background); *United States v. McKinney,* 429 F.2d 1019, *reh. granted and decision aff'd,* 434 F.2d 831 (5th Cir.1970), *cert. denied,* 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971) (newspaper publicity).

■ It is important to examine how the issue of extraneous information was brought to light. In response to the staff judge advocate's review, appellant submitted two affidavits attempting to support the proposition that clandestine information of the scene was used by members in a way prejudicial to appellant. These affidavits were executed by two military lawyers. The trial defense counsel alleged that Captain Paulsen, a court member, had said he had visited the scene in order to understand the testimony. Captain McAllister averred that, in company with trial defense counsel, he heard court member Warrant Officer Reece state that he had checked the crime scene to observe certain physical features. Like the court below, we are unable to consider these hearsay allegations. *United States v. Witherspoon,* 12 M.J. 588, 589 n. 5 (A.C.M.R.1981).

Nevertheless, in response to these hearsay allegations, the staff judge advocate, in essence, polled the jury, and submitted, as an addendum to his post-trial review, affidavits from each of the court members regarding extraneous information which may have affected their deliberations. Although we will consider this information on the granted issue in this case, we regard this procedure as improper.

■ The staff judge advocate here employed affidavits from court members to rebut the defense response to his post-trial review for the convening authority.[2] The

purpose of the aforementioned exception to the nonimpeachability rule regarding members' verdicts, however, contemplates judicial review and assessment. In the instant case, the appropriate procedure calls for referral of the matter to the trial judge for judicial assessment of the facts and the prejudicial impact on appellant's rights. Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a). We do not conclude, however, that absence of this appropriate procedure was detrimental to appellant.

■ Turning to the second question in this case, we note that the United States Supreme Court has recently ruled that a court can "ascertain the impartiality of a juror by relying solely upon the testimony of the juror in question." *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982). According to his affidavit, Captain Paulsen indicated that during trial he had occasion to drive to the Officers Club, the scene of the crime, and "so while . . . there I did look." Captain Paulsen indeed stated he had heard some members, "who live on-post and . . . have to drive right by there to go home," discuss the physical conditions and their implication as to accused's accuracy or credibility; but he also maintained that he "had formed . . . [his] own opinion from what . . . [he] saw" and "the talk that went on . . . [and he didn't] think [it] really made any difference" for that reason. According to Colonel Chunn's affidavit, trial and defense counsel had brought up the physical features of the area in the court room, so the discussion of them did not bring "out any more than what the trial counsel had already brought out."

Our principal case in this area is *United States v. Bishop, supra.* There we suggested that knowledge by court members of lighting conditions in the area of a rape acquired "because their homes were nearby and they passed through the neighborhood"

**2.** Affidavits from members concerning improper extraneous prejudicial information may be utilized by the trial judge in his judicial assessment. Mil.R.Evid. 606(b); Article 39(a), UCMJ, 10 U.S.C. § 839(a). *See United States v. Bishop,* 11 M.J. 7 (C.M.A.1981).

would be improperly used if that knowledge "had any effect whatever on their deliberations or decision." The view of the scene of the crime in *Bishop* was merely "casual or fortuitous." *Id.* at 10.

In the instant case the information possessed by Captain Paulsen was, as appellant asserts, the result of more than mere fortuitous common knowledge; it was the result of a deliberate and unauthorized viewing of the scene of the crime. However, as did the court below, we conclude that Captain Paulsen's improper actions did not prejudice appellant. We observe that the information improperly obtained by Captain Paulsen was equivalent to information known by the members as a matter of common knowledge. *Cf. United States v. Conley,* 4 M.J. 327 (C.M.A.1978). Furthermore, as the court below stated, "[i]f Captain Paulsen had not visited the scene, it may reasonably be concluded that the information would have been made available to him during deliberations." *United States v. Witherspoon, supra* at 591.

Accordingly, we rule that despite the incorrect procedure used by the staff judge advocate and the unauthorized view of the scene of the crime by court member, Captain Paulsen, appellant thereby suffered no prejudice.

The decision of the United States Army Court of Military Review is affirmed.

EVERETT, Chief Judge (concurring in the result):

In some cases post-trial claims of misconduct by court-martial members can be satisfactorily resolved on the basis of affidavits. However, I agree with the principal opinion that here the convening authority should have directed the military judge to conduct a hearing on the possible misconduct and make suitable findings. *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). Moreover, in my view such a hearing could have been convened by the military judge on his own initiative or upon motion by the parties.

I also agree with the principal opinion that the failure to follow the appropriate procedure in this case did not prejudice appellant.

COOK, Judge (concurring in the result and dissenting):

I concur that the unauthorized viewing of the crime scene by a court member was not prejudicial to the accused and, accordingly, concur in affirming the decision of the United States Army Court of Military Review. However, I do not agree that the staff judge advocate acted improperly in obtaining affidavits from the court members regarding extraneous information which might have affected their deliberations and that the proper "procedure calls for referral of the matter to the trial judge for judicial assessment of the facts and the prejudicial impact on appellant's rights." 16 M.J. 252, 254.

The seminal case on this subject is *Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892). There, after being convicted of murder, the defendant supported his motion for a new trial with affidavits from two jurors which related improper statements made to them by the bailiff after the case had been submitted for their consideration; and affidavits from eight other jurors which related that a newspaper containing an article about the case "was introduced into the jury room." *Id.* at 143, 13 S.Ct. at 52. The trial court excluded the affidavits and the newspaper, and denied the motion for a new trial. The Supreme Court reversed. It approved the language of Mr. Justice Horace Gray, then of the Supreme Judicial Court of Massachusetts, in *Woodward v. Leavitt,* 107 Mass. 453:

"But a juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind."

The Court held:

We regard the rule thus laid down as conformable to right reason and sustained by the weight of authority. These affidavits were within the rule, and being

material their exclusion constitutes reversible error.

146 U.S. at 149, 13 S.Ct. at 53.

We followed the *Mattox* rationale in *United States v. Bourchier*, 5 U.S.C.M.A. 15, 17 C.M.R. 15 (1954). There the defense filed affidavits concerning alleged command influence and attempts by the convening authority to sway the court members' decision. In response, appellate government counsel filed affidavits from the same people which covered the same subject matter. This Court considered the affidavits in resolving the issue before us, saying:

> It is perfectly clear that the motion and supplemental affidavits represent an impermissible attempt to impeach the findings of the court-martial. The fundamental rule that the testimony of jurors will not be received to impeach their verdict, with respect to matters which essentially inhere therein, is too well settled to require citation of authority. We are not unmindful of the fact that an exception to this principle permits the reception of such testimony when it relates to extraneous influences to which the jurors have been exposed.

*Id.* at 27, 17 C.M.R. at 27. Thus, while rejecting the affidavits because of their subject matter, we recognized that they would have been admissible if they had pertained to extraneous influences which had improperly affected the jury's deliberations.

In *United States v. Webb,* 8 U.S.C.M.A. 70, 23 C.M.R. 294 (1957), pursuant to Article 38(c), Uniform Code of Military Justice, 10 U.S.C. § 838(c), affidavits were submitted to the convening authority which concerned the members' consideration, in closed session, of a book on narcotics that had not been admitted into evidence. We approved the submission of the affidavits to the convening authority for his consideration prior to his action:

> Utilizing his first opportunity, defense counsel sought corrective action at the convening authority level, and the staff judge advocate's review shows that the

affidavits were available to the reviewing authority for consideration. *It is good law that issues which go to the very heart of a fair trial should be raised at the first opportunity and that irregularities which, for good and sufficient reason, were not considered during the trial proper should be called to the attention of the convening authority so that he can weigh them for their impact on the findings and sentence.*

*Id.* at 73–74, 23 C.M.R. at 297–98 (emphasis added).

In *United States v. West,* 23 U.S.C.M.A. 77, 48 C.M.R. 548 (1974), we rejected an affidavit regarding alleged improprieties in voting on sentence on the ground that it amounted to an impeachment of the verdict. But, significantly, the affidavit was considered in arriving at this conclusion and in determining what further action might be necessary.

Most recently, in *United States v. Bishop,* 11 M.J. 7 (C.M.A.1981), we considered affidavits from some court members regarding their knowledge of lighting conditions in an area where a rape had occurred, and we also considered conflicting affidavits from the same court members. There, in resolving an issue similar to that in the instant case, we said:

> We turn first to the question of whether our consideration of such affidavits is proper. This is clearly answered by Mil. R.Evid. 606(b), allowing inquiry into whether extraneous prejudicial information was improperly brought to the jury's attention.... Testimony may be received from the jurors regarding external extraneous influences bearing on their deliberative process. [Citing *Mattox.*]
>
> \*   \*   \*   \*   \*   \*
>
> We now turn to an evaluation of the allegations in these *properly considered affidavits.*
>
> \*   \*   \*   \*   \*   \*

Therefore, a fair reading of the affidavits before us does not show that the personal familiarity of the members had any effect whatever on their delibera-

tions or decision in this case. [Citation omitted.] We cannot, therefore, extract from these affidavits any evidence that the court members violated the military judge's instruction to consider in their deliberations only evidence admitted in open court. As there was no prejudicial extraneous information injected into their deliberations there is no reason in law or logic to reverse the lower court's decision.

11 M.J. at 8, 9, and 10 (footnote omitted; emphasis added).

Thus, it is clear that as late as 2 years ago we were willing to consider affidavits going to the question of impropriety in the members' deliberations and to resolve the issue on that basis. What the lead opinion does is to read out of existence the procedure that has worked so well in the past; and, by requiring an independent judicial assessment of the facts, to further curtail the power of the convening authority to correct trial errors at the first level of review. The convening authority is charged with "approv[ing] only such findings of guilty, and the sentence or such part or amount of the sentence, as he finds correct in law and fact and as he in his discretion determines should be approved." Article 64, UCMJ, 10 U.S.C. § 864. The Code makes the convening authority an integral part of the trial-review process in military law. It is unconscionable to remove his statutory role by judicial fiat. In addition, it flies in the face of the express holding in *United States v. Webb, supra,* that errors affecting the trial should be brought to the attention of the convening authority for his consideration as to "their impact on the findings and sentence."

Finally, the lead opinion changes the prevailing military practice and substitutes a new procedure without detailing how such a procedure is to be implemented. How is the matter to be brought before the military judge after the record is authenticated and delivered to the convening authority, when the military judge loses his judicial status at that point? Obviously, the convening authority must reappoint the military judge. If this is necessary, what is gained by the process when, before arriving at the decision to reappoint the military judge, the convening authority must consider the affidavits to determine if there is an issue which properly requires a limited hearing? I certainly agree that if there are conflicting affidavits, or if there is some evidentiary matter which cannot be resolved by consideration of the affidavits alone, the convening authority must order a limited evidentiary hearing. Or, if the affidavits raise some issue directly involving the convening authority, the matter must be referred to the military judge for the taking of evidence and findings of fact. *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). However, if the convening authority can properly resolve the issue on the basis of the affidavits, there is no need to hold a further hearing. I can see "no reason in law or logic," *United States v. Bishop, supra* at 10, to abandon a procedure that has worked successfully for almost 30 years in favor of a new procedure that can only extend the time required to review the particular case.

The lead opinion correctly notes that the affidavits submitted by the defense counsel were hearsay, and, hence, could not form the basis for action by the convening authority. However, the staff judge advocate took the path of greatest caution and accepted them for the purpose of raising the issue of jury misconduct. He then obtained from the members themselves affidavits that permitted him to satisfy himself that no impropriety existed and so advised the convening authority. The latter correctly resolved the issue and approved the findings and sentence of the court-martial. I find nothing wrong in this procedure. In the absence of "a barrage of claims and counterclaims," *United States v. DuBay, supra* at 149, 37 C.M.R. at 413, I believe that the matter of jury impropriety can be resolved without resorting to a further hearing before a military judge.

Accordingly, I concur in the result and dissent.