UNITED STATES, Appellee

v

CHARLES E. WILBURN, Specialist Four,
U. S. Army, Appellant

20 USCMA 86, 42 CMR 278

No. 23,135

September 11, 1970

*Colonel Daniel T. Ghent, Captain Howard L. Kaplus,* and *Captain Ira J. Dembrow* were on the pleadings for Appellant, Accused.

*Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Captain Mark Rosenberg* were on the pleadings for Appellee, United States.

## Opinion of the Court

DARDEN, Judge:

In United States v Williams, 20 USCMA 47, 42 CMR 239 (1970), we held that failure of the military judge to inquire of the appellant personally if he had anything to say in his own behalf before sentencing did not make the later sentence illegal. That same issue in this case is controlled by our opinion in United States v Williams, supra. The decision of the Court of Military Review is therefore affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

While I concurred in United States v Williams, 20 USCMA 47, 42 CMR 239 (1970), on which my brothers base their affirmance in this case, I did so in light of the particular facts of that case. See my separate opinion in *Williams*. Since I do not find those or any similar facts present in this case, reflecting that the accused was afforded the right to speak on his own behalf before sentencing, I must record my dissent.

The accused was convicted of one specification each of assault and battery on a noncommissioned officer, willful disobedience of a lawful order of a superior officer and assault, whereby grievous bodily harm was intentionally inflicted, on a noncommissioned officer, in violation of Articles 90 and 128, Uniform Code of Military Justice, 10 USC §§ 890 and 928. The court was instructed that in addition to dishonorable discharge, total forfeitures, and reduction, the maximum imposable confinement for these offenses was ten and one-half years. The convening authority affirmed the findings and sentence of the court (dishonorable discharge, total forfeitures, confinement at hard labor for four years, and reduction in grade) but the Court of Military Review reduced the finding of assault,

whereby grievous bodily harm was intentionally inflicted, to assault with a deadly weapon. Upon reassessment of the sentence, it approved all but the confinement portion which it reduced to three years at hard labor because of the difference in penalty between the offenses of which the accused was convicted and those approved.

The accused was tried in common with Private Watts and Specialist Four Brown. After the court returned its findings of guilty, the law officer conducted an out-of-court hearing, with both trial and defense counsel and each of the accused present, to discuss the instructions to be given as to sentence and the maximum punishment imposable on each accused. Nothing was said at this time, by the law officer or counsel, relative to the right of this accused, or either of the other accused, to speak on his own behalf in mitigation and extenuation. When the court reopened, trial counsel read, from the first page of the charge sheets, the personal data of each accused and stated that he had no evidence of previous court-martial convictions against any of the accused. The record then reflects the following:

"LO: Defense?

"DC: The defense would like to present an unsworn statement on behalf of each of the accused through me. Gentlemen, I make an unsworn statement on behalf of each accused in which I will try to give you the individual. On behalf of the accused Watts I submit the following to you: . . . . On behalf of the accused Elder Brown, I submit the following to you for your consideration: . . . . On behalf of the accused Charles Wilburn, I submit the following to you: Today is Charles Wilburn's ETS date. On his uniform he wears the Bronze Star with the V device with Oak Leaf Cluster, Combat Infantryman's Badge, the

Vietnam Campaign Medal, Vietnam Service Medal and the National Defense Service Medal. He was rated six times and all were excellent for efficiency and all were excellent for conduct. Wilburn is a member of a family that has five children. He is from Benton Harbor, Michigan. He has made arrangements to get married on the 27th of March of this year. While in the Republic of Vietnam, he supported his mother through his allotments. He also found it so difficult at home because of financial things around his mother that he was forced to submit a request for a hardship discharge. This request, however, was not granted. He has been sending one hundred dollars a month home to his mother even though it was not taken out on the allotment. Wilburn's father has been dead since he was three years old. He is presently twenty-two years old. While in the Republic of Vietnam, he was put in for a Silver Star. He has not received the Silver Star as of this date. Thank you, gentlemen. Excuse me, gentlemen, I have been informed that I would like to make an additional statement. Charles Wilburn was three months old when his father died rather than three years old.

"LO: All right."

At this point, without any more being said, trial counsel argued the matter of sentence to the court. When defense counsel completed his argument, trial counsel rebutted and the law officer gave his instructions on sentence. The sentence of the court, as noted above, followed.

The common-law right of allocution is preserved in Rule 32(a) of the Federal Rules of Criminal Procedure, Title 18, United States Code, which provides in pertinent part:

". . . Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment."

The importance of this right was affirmed by the Supreme Court in Green v United States, 365 US 301, 5 L Ed 2d 670, 81 S Ct 653 (1961), and Hill v United States, 368 US 424, 7 L Ed 2d 417, 82 S Ct 468 (1962), rehearing denied, 369 US 808, 7 L Ed 2d 556, 82 S Ct 640 (1962), although in the latter case the Court held, in a 5–4 decision, that while it was error for the trial judge not to personally inform an accused of his right to speak, the error was not of constitutional or jurisdictional proportions.[1]

Paragraph 75c(2), Manual for Courts-Martial, United States, 1969 (Revised edition), fashioned after the Federal rule, provides in part that:

"*Statement of accused.* Whether or not he testified on the issue of guilt or innocence or as to matters in extenuation or mitigation, the accused may make an unsworn statement to the court in mitigation or extenuation of the offenses of which he stands convicted. . . ."

The right to speak on one's behalf is a personal right, the importance of which cannot be minimized. As Mr. Justice Frankfurter stated in writing for the Court in Green v United States, supra:

". . . The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." [*Ibid.*, 365 US, at page 304.]

The situation in this case amply demonstrates the wisdom of Justice Frankfurter's statement. The accused was a combat veteran who had already been awarded the Bronze Star with "V" (valor) device with an *oak leaf cluster*. While in Vietnam he had

---

[1] The four dissenting members in Hill v United States, 368 US 424, 7 L Ed 2d 417, 82 S Ct 468 (1962), would have held that since Rule 32(a) "has the force of law . . . a sentence imposed in violation of law is plainly 'illegal.'" 368 US, at page 435.

been recommended for a Silver Star. He was rated six times and all ratings were excellent for both efficiency and *conduct.* He had no prior convictions by court-martial. The offenses of which he was convicted were not exactly earth-shattering, occurred on one evening, in the same general place, within a short period of time, and just thirty-nine days prior to his expected discharge from the service. Admittedly, the accused was in a highly emotional state part of the time. Although the court was made aware of these matters through the statement made by defense counsel, it received no personal plea from the accused. *Nor does the record reflect that he was ever informed by any one of his right to make a statement on his own behalf.*

I am not unaware that paragraph 53*h*, Manual, supra, in speaking of the rights of an accused tried by court-martial, including the right to make a statement as provided in paragraph 75*c*(2), states that:

". . . When an accused is represented by legally qualified counsel, it may be assumed that he has been correctly advised of these rights, and it is unnecessary to inquire if the accused has been so advised or to explain the right to the accused. Any inquiry or explanation as to the rights of the accused to testify in a court-martial with a military judge shall be made out of the hearing of the court members.[2] See appendix 8 for forms of instructions."

However, according to the Analysis of Contents, Manual for Courts-Martial, United States, 1969, this provision of the Manual changed previous procedure and was based on our decision in United States v Endsley, 10 USCMA 255, 27 CMR 329 (1959). The Court's concern in *Endsley* was with the law officer's *open-court* advice to the

accused of his right to take the witness stand or to remain silent *before findings.* We criticized this practice as being unnecessary, undesirable, and:

". . . [A] hold-over from the time when the accused was not represented by a qualified lawyer and it was uncertain as to whether he would be properly advised of his rights." [*Ibid.,* at page 257.]

The *Endsley* opinion referred only to the *open-court* advice to that accused of his right to testify or remain silent *on the merits of the case.* As we said in United States v Williams, supra, at page 49:

". . . If, then, the current paragraph 53*h* of the Manual is considered as a justification for not informing an accused of his privilege of allocution because of this Court's opinion in *Endsley,* any such construction of the paragraph is an over-extension of the point the Court made in the *Endsley* opinion."

We opined in *Endsley* that when the accused is represented by qualified counsel, there should be little need for the law officer to advise him regarding his fundamental rights since any qualified counsel should be fully aware of his obligation to render advice to his client in this regard. But that statement was dicta and did not deter us from the subsequent holding in United States v Donohew, 18 USCMA 149, 39 CMR 149 (1969), that the *record must reflect the accused's personal response* to direct questions by the presiding officer regarding the accused's knowledge and understanding of his right to counsel under Article 38(b), Code, supra, 10 USC § 838. We took similar action with regard to pleas of guilty in United States v Care, 18 USCMA 535, 40 CMR 247 (1969).

I believe that the accused's right to personally speak to the court on the matter of sentencing, as provided in paragraph 75*c*(2), which has the force

---

[2] In the initial edition of the 1969 Manual, the penultimate sentence of the quoted portion reads:
". . . Any inquiry or explanation as to the rights of the accused to testify in a general court-martial shall be made out of the hearing of the court members."

of law (United States v Smith, 13 USCMA 105, 32 CMR 105 (1962)), is of equal stature with his right to counsel and his pleas of guilty, and that the record should specifically reflect his knowledge and understanding of that right. I believe that the military judge should be charged with determining whether the accused is aware of his right of allocution and the record of trial should so reflect. A silent record, as here, does not satisfy that requirement.

I would reverse the decision of the Court of Military Review as to sentence and direct that a rehearing on sentence may be ordered.