**UNITED STATES**

v.

**Raymond R. MARTINEZ, 585 52 0186, Boatswain's Mate Second Class (E-5), U.S. Navy.**

**NMCM 83 3256.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 17 Nov. 1982.

Decided 17 Feb. 1984.

CDR David C. Larson, JAGC, USN, Appellate Defense Counsel.

LCDR Claude P. Goddard, JAGC, USN, Appellate Defense Counsel.

MAJ J.S. Uberman, USMC, Appellate Government Counsel.

Before GORMLEY, Senior Judge, and KERCHEVAL and LECORNU, JJ.

LECORNU, Judge:

Contrary to his pleas before a special court-martial, composed of one officer and two enlisted members, appellant was convicted of wrongful sale, possession, and transfer of 7.12 grams, more or less, of marijuana in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892, and also of perjury at an unrelated special court-martial in violation of Article 131, UCMJ, 10 U.S.C. § 931. He

was sentenced to confinement at hard labor for 30 days, reduction to the lowest enlisted pay grade, and a bad-conduct discharge. The findings and sentence were approved without modification by intermediate reviewing authorities. Appellant has assigned five errors before this Court. As the fifth assignment requires reversal of all findings, there is no need to discuss the first four assignments which relate to sufficiency of the evidence and multiplicity.

## THE FACTS

At the conclusion of the trial on the merits, the president of the court announced the findings as follows:

> Boatswain's Mate Second Class Petty Officer Raymond R. Martinez, it is my duty as president of this court to inform you that the court in closed session finds you:

> Of all Specifications and Charges: Guilty.

The president had been provided with a findings worksheet which conformed to the recommended language of Appendix 8b, *Manual for Courts-Martial, 1969 (Rev.)* (MCM). He read, however, from a redacted version in which the references to secret written ballot and two-thirds concurrence had been deleted. This omission went unnoticed, and the trial proceeded through sentencing with no further irregularities.

While authenticating the record, the military judge first recognized the possibility that the findings had not been determined by secret written ballot, with at least two-thirds of the members concurring. He immediately convened a session of the court, with counsel and accused present, in an attempt to resolve the matter. Called as a witness, the president of the court testified that all three members were present during deliberations on findings, that two-thirds of the members concurred in the findings of guilty, but that the voting was accomplished by *oral* ballot. In response to the military judge's question concerning two-thirds concurrence, the president volunteered that the votes were unanimous. The military judge thereupon adjourned the court.

Subsequently, the convening authority reconvened the court in a revision proceeding. The stated purpose of the hearing was to determine whether secret written balloting was employed and, if not, whether the facts and circumstances demonstrated that the accused had been prejudiced. Over defense objection, the president of the court and one of the enlisted members testified regarding the deliberations on findings.[1] The enlisted member confirmed that the balloting was conducted orally and that the vote was unanimous. Both the president and the member were then examined extensively on other aspects of the deliberative process. The opinion of each, for example, was sought regarding the possibility that superior rank had influenced the outcome. The response was negative. The members' testimony also indicated that a separate vote had not been taken on each specification. At the conclusion of the proceeding, the defense counsel moved for a mistrial because of the members' failure to abide by the judge's instructions. The military judge denied the motion without comment and adjourned the court.

## DISCUSSION

■ The prevailing fifth assignment which we will discuss is as follows:

THE MEMBERS OF THE COURT FAILED TO COMPLY WITH ARTICLE 51(a), UCMJ, PARAGRAPH 74d(2), MANUAL FOR COURTS–MARTIAL, 1969 (REV.), AND THE INSTRUCTIONS OF THE MILITARY JUDGE WHEN THEY DID NOT VOTE BY SECRET WRITTEN BALLOT ON THE ISSUE OF GUILT OR INNOCENCE.

The opposing contentions of the parties with respect to this assignment, both in the proceedings below and on appeal to this Court, can be briefly summarized. Appellant urges, and the government concedes, that the failure of the members to vote by secret written ballot separately on each charge and specification constituted presumptively prejudicial error. Appellant

1. The other enlisted member had died during the interim.

further argues that the military judge's post-trial inquiries in search of evidence to rebut the presumption of prejudice were in contravention of well-established case law and the Military Rules of Evidence. Appellant also contends that, even if this court determines that the information developed by the military judge may properly be considered, reversal is required because the post-trial disclosures of the members do not sufficiently rebut the presumption. Specifically, it is contended that there is no adequate guarantee that the influence of rank did not affect the oral votes of the two enlisted members.

The government argues that the post-trial actions of the military judge were a legitimate exercise of his responsibility to determine if there was compelling evidence to rebut the presumption of prejudice and, if so, to make it a matter of record. The military judge's questions, it is urged, are sanctioned by pertinent evidentiary rules and disclosed facts demonstrating that no prejudice resulted. In this connection, we are asked to consider the following: first, that the surviving members testified that they were not improperly influenced by rank—the evil which the secret written ballot guards against; secondly, that the assurances of two members that their votes would have been the same in a secret ballot demonstrated that the deceased member's vote would not have influenced the outcome; and, finally, that sequential voting would not have led to a different result, as resolution of the credibility issue against appellant on one specification dictated findings of guilty on all of them.

We begin our analysis with Article 51(a), UCMJ, 10 U.S.C. § 851(a), which requires that votes "of a ... court-martial on the findings ... be by secret written ballot." This requirement is more than a mere technicality; it is a substantial right. *United States v. Boland,* 20 U.S.C.M.A. 83, 42 C.M.R. 275, 277 (1970). The secret written ballot permits a member to vote his conscience, even if he agreed to a contrary position during the oral deliberative process. Its paramount importance in the military justice system is not open to doubt. *See United States v. Chaplin,* 8 M.J. 621, 627 (N.C.M.R.1979).

An announcement of findings which fails to mention either that a secret written ballot was taken or that the required percentage of members concurred is error. Absent some other indication that the members did not follow the judge's instructions, however, such an omission will not counter the presumption of regularity and will not be considered prejudicial. *United States v. Jenkins,* 12 M.J. 222 (C.M.A.1982). Thus, in the instant case, the findings announcement, standing alone, would not have dispelled the presumption of regularity. *Id.* at 224. The error, however, also was "plain" on the face of the findings worksheet. Under these circumstances, it was incumbent upon the military judge to ensure that the members correctly followed his instructions.

After the president of the court confirmed that the members had deviated from the judge's instructions, the apparent irregularity became presumptively prejudicial, yielding only to "*compelling* evidence in the record that no harm actually resulted," *Boland, supra,* at 42 C.M.R. 278. Whether there is sufficient competent evidence of record to rebut the presumption of prejudice is the dispositive issue before us. Resolution of this issue, in turn, requires that we determine whether the evidence developed by the court during the post-trial proceedings is admissible for this purpose under pertinent provisions of the Military Rules of Evidence (Mil.R.Evid.).

Rule 606(b), Mil.R.Evid., strictly limits matters about which a court member may testify at an "inquiry into the validity of findings or sentence."[2] As a general prop-

---

2. MIL.R.EVID. 606(b) provides:

(b) *Inquiry into validity of findings or sentence.* Upon an inquiry into the validity of the findings or sentence, a member may not testify as to any matter or statement occurring during the course of the deliberations of the members of the court-martial or to the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent to or dissent

osition, a member may not testify concerning anything occurring during deliberations, unless the purpose of the inquiry is to determine if the members were subjected to extraneous prejudicial information, improper outside influence, or unlawful command influence. We must decide, therefore, if the information elicited from the members during the post-trial inquiries fits one of these exceptions.

■ The government urges that the military judge's questions were permissible under the unlawful command influence exception. It finds support for this position in the drafter's comments on the rule.[3] There, it is stated that the use of superior rank by one member of a court to sway others is within the contemplation of this exception. The government contends that because the military judge was required to determine if appellant was prejudiced by the oral ballot his inquiry regarding the influence of superior rank was entirely proper.

Although we agree that inquiry concerning the influence of superior rank during deliberations is permissible under Rule 606(b), we are convinced that its scope is narrow. To determine its limits, we look to the wealth of judicial precedent on which this evidentiary rule is founded. One of the earliest and most frequently cited cases ruled that "a [juror] may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind." *Mattox v. United States*, 146 U.S. 140, 148, 13 S.Ct. 50, 52, 36 L.Ed. 917 (1892). This rule has been quoted with approval and followed in a long line of federal cases, *See* Annot. 65 A.L.R.Fed. 835 (1983), as well as in decisions by the Court of Military Appeals. *See, e.g., United*

*States v. Witherspoon,* 16 M.J. 252, 255 (C.M.A.1983) (Cook, J., concurring); *United States v. Bishop,* 11 M.J. 7 (C.M.A.1981); *United States v. West,* 23 U.S.C.M.A. 77, 48 C.M.R. 548 (1974); *United States v. Bourchier,* 5 U.S.C.M.A. 15, 17 C.M.R. 15 (1954). Most of the cases that have been brought to our attention concern an attempt by the accused to utilize evidence of jurors' internal thought processes to impeach a guilty verdict. It seems only fair that the government, in attempting to validate a verdict, should enjoy no greater access to this type of evidence.

Premised on the foregoing, we conclude that the scope of inquiry into the possibility that superior rank improperly influenced court-martial deliberations is strictly limited to a member's testimony as to objective *facts* bearing upon the issue and that testimony as to a member's subjective thoughts, impressions, motivations, or emotions is prohibited. *See* Weinstein, *Evidence,* 606–1—606–45 (1981); Saltzburg, *Military Rules of Evidence Manual,* 284 (1981).

■ Applying this standard to the instant case, we find that the military judge's post-trial interrogation of the members exceeded the permissible scope of inquiry. Apart from the fact that an oral ballot occurred, there were no objective manifestations of improper influence due to rank. Nonetheless, the judge, was confronted with the task of demonstrating that no improper influence inhered in the oral balloting itself. His questions seeking to exclude this possibility, however, called upon the members to disclose matters from within their personal consciousness—an area declared "off limits" by the judicial precedents under which we interpret Rule 606(b). Thus, we hold that the testimony of the

from the findings or sentence or concerning the member's mental process in connection therewith, except that a member may testify on the question whether extraneous prejudicial information was improperly brought to the attention of the members of the court-martial, whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence. Nor may the member's affidavit or evidence of any statement by the member concerning a matter about which the member would be precluded from testifying be received for these purposes.

3. The Analysis of the Military Rules of Evidence states: "Use of superior rank or grade by one member of a court to sway other members would constitute unlawful command influence for purposes of this Rule under ¶ 74*d*(1) (MCM)." Appendix 18, MCM, at A18–87.

members regarding the possible influence of superior rank on the deliberations is not admissible and it was error for the military judge and intermediate reviewing authorities to consider it.

Remaining for consideration is whether, apart from the inadmissible evidence just discussed, there is sufficient competent evidence to rebut the presumption of prejudice arising from the oral balloting, and we find that there is none. In fact, the testimony of the members in other particulars strengthens the presumption of prejudice. As previously noted, the members did not vote separately on each charge and specification in contravention of paragraph 74*d* (2), MCM. We would not be inclined to view this irregularity, standing alone, as reversible error under the circumstances of this case. *United States v. Pena,* 11 M.J. 509 (N.C.M.R.1981). The deprivation of this substantial right, *United States v. Dilday,* 47 C.M.R. 172 (A.C.M.R.1973), however, is a matter to be considered in determining whether, under all the facts and circumstances, appellant received a fair trial. Finally, we attach no significance to the testimony that the oral ballot was unanimous, as this information was the result of manifestly improper inquiry. Paragraph 76*c,* MCM; *See Chaplin, supra* at 626–627.

We are not unsympathetic to the trial courts' position in this case, which essentially was untenable. If the irregularity had been noted prior to adjournment, a remedial secret written ballot, conducted under appropriate instructions, could have eliminated the presumptive prejudice. Once the trial was concluded, however, the well-established rule that severely limits impeachment of verdicts by juror testimony effectively precluded the government from validating a verdict it wished to preserve. Without the slightest hesitancy, we note our belief that the application of the rule in this case achieved the proper result. Appellant was denied a substantial right during his trial. In attempting to show that he was not prejudiced, the government's only recourse was to expose the court members to the very pressures and public scrutiny the secret ballot is designed to prevent.

Were we to conclude that an open examination of members yields competent evidence of how they would have voted in secret, we would essentially be saying that a secret ballot is unnecessary. In our view, the only way to be certain how votes would have been cast in secret, is to cast them in secret.

The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Judge KERCHEVAL concurs.

Senior Judge GORMLEY concurs in the result.