UNITED STATES, Appellee

v

KENNETH B. PAYNE, Aviation Structural Mechanic, Third Class; NORMAN CADOR, Aviation Machinists Mate, Third Class; JAMES C. CHILDRESS, Seaman; and ROBERT L. McCAULEY, Airman, U. S. Navy, Appellants

12 USCMA 455, 31 CMR 41

456

457

No. 14,722

July 28, 1961

*Lieutenant Colonel M. G. Truesdale*, USMC, argued the cause for Appellants, Accused. With him on the brief were *Lieutenant Leo F. O'Brien*, USN, *Fred W. Shields, Esquire*, and *Joseph D. Geller, Esquire*.

*Commander Benjamin H. Berry*, USN, argued the cause for Appellee, United States. With him on the brief was *Captain Warren C. Kiracofe*, USN.

## Opinion

ROBERT E. QUINN, Chief Judge:

The four accused were brought to trial at the same time before a general court-martial in Yokosuka, Japan. Separate motions on behalf of each accused for a severance were denied, and, with some modifications, the accused were convicted of the charges against them. All were sentenced to dishonorable discharge, total forfeiture of pay and allowances, and substantial periods of confinement. The findings of guilty and the sentences were approved by the the convening authority and affirmed by the board of review. On the petition of each accused we granted further review.

While the several petitions have assigned almost fifty errors, there is considerable overlapping. In their final

briefs and arguments, defense counsel have grouped the errors under twenty-one separate items. As is convenient, we shall further combine the assignments and discuss the relevant evidence separately under each point. Suffice it here to note that McCauley obtained seventeen blank official identification cards, some of which were filled in with fictitious names and used by him and the other accused to obtain pay purportedly due to the named individuals.

At trial, the accused appeared by appointed military counsel, Lieutenant H. D. Lawrence, and, "in addition," Payne and Cador were represented by a civilian lawyer, H. Oppenheim, a member of the Massachusetts bar, and Childress appeared by F. E. N. Warren, a civilian attorney admitted to the Oklahoma bar and the bar of the Supreme Court of Japan. All counsel moved for a severance. Mr. Oppenheim argued that a common trial for the accused was improper because, except for the conspiracy specification, the charges laid against each showed the offenses were committed at different times and places, and different evidence would be required to prove these offenses. Mr. Warren made a similar motion on behalf of Childress. Additionally, he indicated he anticipated a "full scale battle royal" among defense counsel, with the others attempting to "hang it onto my client." He maintained that this "conflict" entitled Childress to a severance. Also, he called attention to the large number of witnesses the Government proposed to call, and argued that counsel and the court members would be heavily burdened with "trying to keep things straight" and in limiting to one accused evidence admissible against him but not the others. On behalf of accused McCauley, Lieutenant Lawrence "adopt[ed] the arguments" of individual counsel.

Several accused may be tried in common if the offenses charged were "committed at the same time and place and are provable by the same evidence." Manual for Courts-Martial, United States, 1951, paragraph 33*l*; United States v Bodenheimer, 2 USCMA 130, 7 CMR 6. Offenses provable by differ-

ent evidence cannot be tried in common, notwithstanding that the offense with which each accused is charged is closely related. United States v Alvarez, 10 USCMA 24, 27 CMR 98.

Charge II against Payne and Charge III against the other accused allege that they conspired to steal currency in excess of $1,000.00 from the United States Government by means of false vouchers. It is further alleged that in order to effect the object of the conspiracy, each accused presented at various times and places false vouchers for pay. The specification against each accused sets out the substantive acts of presenting false claims which are charged to each. Thus, Payne is charged in one specification of presenting a false pay voucher for $200.00 on April 20, 1959 (Charge I), and this act is alleged as the overt act in the conspiracy specification on his charge sheet; on Cador's charge sheet the conspiracy specification alleges as overt acts the presentment of false pay vouchers at Camp Drake and Hardy Barracks, and these acts are also set out as substantive offenses. The larceny and attempted larceny charges stem from the presentation of the false claims. In addition, there are separate charges of wrongful impersonation of an officer and the wrongful possession of false identification cards with the intent to deceive.

The joinder was entirely correct as to the conspiracy, larceny, and false claim charges. Schaffer v United States, 362 US 511, 80 S Ct 945, 4 L ed 2d 921 (1960). In the *Schaffer* case, as here, separate substantive offenses were also alleged as the overt acts in a conspiracy count. The United States Supreme Court upheld the joinder. As to the specifications alleging impersonation of an officer and wrongful possession of false credentials, these acts are so closely related to, and connected with, the larceny and false claim charges as to be provable by the same evidence. Consequently, they too were properly tried together. Manual for Courts-Martial, supra; United States v Bodenheimer, supra, page 133; see also Federal Rules of Criminal Pro-

cedure, Rule 8(b). The fact that Payne and Cador were eventually acquitted of conspiring with each other, does not impair the validity of the joinder. Schaffer v United States, supra; cf. United States v Manfredi, 275 F2d 588, 593 (CA 2d Cir) (1960).

Turning to the contention that the number of offenses and defendants would place an intolerable ▬▬▬■ burden upon the court-martial in "trying to keep things straight," we may assume that a trial "so massive and [so] complicated that no jury could follow the evidence or separate defendants from each other would be a deprivation of due process." United States v Bonanno, 177 F Supp 106, 113 (SD NY) (1959). Mass trials, however, are not unusual. For example, in Allen v United States, 4 F2d 688 (CA 7th Cir) (1924), cert den 267 US 597, 69 L ed 806, 45 S Ct 353 (1925), there were seventy-five defendants. See also United States v Williams, 10 USCMA 33, 27 CMR 107. Normally, the trial judge, with the exercise of due care and the maintenance of proper decorum, can so conduct a trial as to assure each defendant that the triers of facts will give separate and impartial consideration to his case. See Note, *The Challenge of The Mass Trial*, 68 Harvard Law Review 1046 (1955). This is true, even though, as here, it is anticipated there will be hostility among defendants. Referring to the effect of hostility among defendants on the right to a severance, the Court of Appeals for the 10th Circuit said:

". . . The mere fact that there is hostility between defendants or that one may try to save himself at the expense of another is in itself alone not sufficient grounds to require separate trials. It is only when the situation is such that the exercise of common sense and sound judicial judgment should lead one to conclude that one defendant cannot have a fair trial, as that term is understood in law, that a severance should be granted." [Dauer v United States, 189 F 2d 343, 344 (CA 10th Cir) (1951), cert den 342 US 898, 96 L ed 672, 72 S Ct 232 (1951).]

460

We conclude the law officer properly denied the motion for a severance.

Appellants contend the transcript of the record of trial is not verbatim. The argument has two parts. ▬▬▬■ The first deals with the insertion of additional pages in the record of trial, after it was determined the initial transcript did not include certain material. It is not contended that the inserted matter reflects proceedings which did not take place at trial, or that it is an incorrect transcript of what did actually occur. Cf. United States v Roberts, 7 USCMA 322, 22 CMR 122. Nor is it contended that the authentication of the record does not cover the inserted pages. As far as the authenticity of the record before us is concerned, therefore, the transcript is a complete and correct record of the trial proceedings. All the so-called additions amount to then is a change in the numbering of the pages of the record so that some pages are identified with a number and letter, *e.g.*, 31a, 31b, etc., instead of following an absolute number sequence from 31 to 32 to 33, etc. There is no evidence to overcome the presumption of regularity which accompanies proper authentification. United States v Galloway, 2 USCMA 433, 9 CMR 63; United States v Albright, 9 USCMA 628, 26 CMR 408. The first part of the assignment of error has no merit.

Next, appellants maintain there are evident omissions from the authenticated record. The first alleged omission concerns a conference between all counsel and the law officer in the latter's office. Reference to the conference appears in remarks by Mr. Oppenheim. Every discussion about the case between the law officer and counsel is not required to be recorded as part of the record of trial. United States v Ransom, 4 USCMA 195, 203, 15 CMR 195; cf. United States v Bruce, 12 USCMA 410, 30 CMR 410. The second purported omission relates to a closed session conference by the court members in connection with an instruction by the law officer that a pretrial statement by McCauley could not be considered as evidence against the other

accused. When court reconvened, the president informed the law officer of the purpose of the conference as follows:

"The closed session of the court was requested in order to assure the President of the court that everyone in the court, and individually, understood the law officer's ruling and to make sure that we understood the fact that anything mentioning other defendants and the defendant who made the statement, and anything regarding conspiracy was to be completely disregarded. We wanted to make sure that everything was perfectly clear to everybody on that fact, and because it began to appear that there was a lot regarding conspiracy in this record and I wanted to be certain that there was no misunderstanding at all on this point. This was discussed and we agreed."

Members of a court-martial should not discuss a case until it is submitted to them for final decision. The preliminary discussion, therefore, was unnecessary and should not have been held. However, its substance was made known to all the parties. No accused disputes the truthfulness or the accuracy of the president's statement of what transpired. Since that shows clearly the discussion was beneficial to all accused, the absence of a verbatim account cannot be considered prejudicial. See United States v Nelson, 3 USCMA 482, 13 CMR 38; cf. United States v Wolfe, 8 USCMA 247, 24 CMR 57. We find no merit in either aspect of the claim of incompleteness of the record of trial.

Several challenges to the sufficiency of the evidence are pressed upon us. In one it is contended that the evidence is insufficient to support the false claim specification laid against each accused because there is no showing the "persons indicated on the documents whereby the claims were made were not real persons" having real claims against the United States. Actually, the complaint is: There is fatal variance between the allegations of the specification and the proof. From either standpoint, the claim lacks merit. The evidence shows that in each instance the signature of the purported payee on the claim document was made by an accused who represented himself to be that payee and who used false credentials to bolster his representation. Each accused, therefore, presented a claim which he knew to be false and fraudulent, in that he purported to be the person named in the document. Whether such persons existed and had genuine claims against the Government were unimportant to the falsity of the representation by each accused that he was the payee named in the particular claim.

It is also argued that the evidence is insufficient to prove the conspiracy charge. Substantial evidence shows McCauley obtained the blank identification cards and Childress procured blank pay record forms. Shortly thereafter some of these instruments were used by them and Payne and Cador in connection with their false claims for pay. On certain occasions Childress and Cador appeared together at the same time and place and presented individual false vouchers. On another occasion Cador was accompanied by McCauley and the pattern of procedure was the same. It also appears that a completed identification card was found in McCauley's automobile, which bore a signature by a purported issuing officer, whose handwriting, as noted by the board of review, was "strikingly similar" to the handwriting of Childress. The court could reasonably conclude from these circumstances that an agreement to defraud the United States existed between McCauley, Childress, and Cador. As for Payne, besides evidence of his use of an identification card and pay record form obtained by McCauley and Childress, his picture and fingerprints were on the above-mentioned card found in McCauley's car. From these circumstances, and the evidence of the substantive acts, the court-martial could reasonably conclude the three were joined in a conspiracy to cheat the Government by presenting false claims for pay. We agree with the board of review below that there is

461

substantial evidence to support findings of guilty of conspiracy. We have carefully considered all the other claims of insufficiency of the evidence, and we find ample evidence in the record of trial to support the findings of guilty.

Three matters are advanced by appellants to support a general claim of denial of due process. First, they contend the accuser acted as reporter at the pretrial investigation and as stenographer for the taking of two oral depositions. Government counsel maintain the evidence does not show the accuser was a reporter for the pretrial investigation. An accuser, of course should not be used as the official reporter for proceedings against the accused. See United States v Moeller, 8 USCMA 275, 24 CMR 85. Whether he was so used in this case need not detain us. No objection was made either at the investigation or at the trial. Nor was the deposition or any other testimony adduced at the investigation admitted in evidence at the trial. Consequently, there is no possibility that the accused were prejudiced by the use of the accuser as the reporter. United States v Moeller, supra. Secondly, appellants contend the law officer abdicated his duty as trial judge and actively assisted the prosecution. Two extracts of the proceedings on defense objections to the admission of evidence are cited in support. In each instance, the problem was whether trial counsel had established a predicate for the admission of the evidence and the law officer suggested a course of conduct. Occasional suggestions and recommendations by the law officer to counsel who appear unsure or uncertain of the proper procedure to follow, like the occasional questioning of witnesses, are not unusual in the trial of a case. The mere fact that such assistance or questioning is undertaken does not make the law officer a partisan advocate. In fact, one of the interchanges between trial counsel and the law officer which is now relied upon as evidence of partisanship was construed at the trial, not as evidence of prosecution assistance, but as a demand for adherence to the requirements of law. Thus, Mr. Oppenheim, in objecting to a prosecution exhibit, maintained there was no compliance "with what the law officer feels is necessary to establish first." In short, nothing in the examples cited shows partisan advocacy, or assistance by the law officer; and we find nothing in the record of trial to support appellants' allegation.

The final aspect of the allegation of the denial of due process is premised on the contention that the accused were under armed guard and in prisoner dress "in full view" of the court-martial. Two circumstances provide the background for the claim. First, "on occasion," Childress apparently "walked in front" of the court-martial, while wearing an armband indicating he was "in the guard house"; and, second, during a recess, three members of the court-martial apparently learned that the accused were kept under armed guard while outside the courtroom during recesses. During an argument by Mr. Oppenheim on a motion for a mistrial, these matters were discussed along with some others. Childress' lawyer specifically disclaimed any possibility of prejudice resulting from the court's knowledge that his client was in close confinement. He told the law officer that, as far as he was concerned, the court members "know well that . . . [his] client is in the guard house and [they] have a right to keep him under guard." He was not interested in the motion for a mistrial. Mr. Oppenheim then told the law officer that his clients, Payne and Cador, were not "prisoners" and that he was "just sensitive" to the armed guard requirement, but he thought they could "straighten this whole thing out." The law officer gave all counsel an opportunity to examine the court members. A few questions were asked, but none were directed to the effect of the knowledge by the court members that the accused were in confinement and were in the custody of armed guards during recesses of the court. At the end of the examination, all defense counsel indicated they saw no basis for prejudice. Thereafter, no

mention was made of the matter of armed guards and the accused's pretrial confinement. Under the circumstances, there is no merit in this part of the claim of error. United States v Wolfe, supra.

Errors relating to one or more of the accused are also said to be present. For the most part, each matter complained of is not error, or if error, there is either a manifest absence of prejudice or a waiver of the error. For example, three of the accused contend they are "victims of a 'command scheme' " to prosecute them. The contention turns principally on the fact the charges were filed on the same day the pretrial investigation was held. This circumstance, and some others we need not detail, indicate, the appellants maintain, "an arbitrary and pre-determined handling of the pre-trial aspects of the case" and made a mere "mockery" of the pretrial proceedings. No objection was made, either during the investigation itself or at the trial, although the accused were represented by civilian counsel at both. If there are any deficiencies in the pretrial proceedings, or if these were perfunctory, the failure to object at trial waived the defects. United States v Mickel, 9 USCMA 324, 26 CMR 104. Some accused contend they were prejudiced by the failure of the law officer to require trial counsel to mask certain remarks about them which were made by McCauley in a pretrial statement by him admitted into evidence. The law officer instructed the court members they were not to consider McCauley's statement as evidence against the other accused. While the complaining accused concede the general rule that a cautionary instruction is normally sufficient to protect the rights of co-defendants in a situation of this kind, they contend it was impossible for the court-martial to follow the instruction in this case. It is noteworthy, however, that the cautionary instruction prompted the court members to hold the conference we mentioned earlier to be certain they understood the advice. In our opinion, the record of trial convincingly indicates the court members understood the limitation upon them and conscientiously followed the instruction.

Childress maintains he was represented by "wholly inadequate counsel" because at a point late in the trial, his lawyer Mr. Warren indicated he had no file for the case and he was "just . . . playing this by ear from the start." At the beginning of the next day's session, however, Mr. Warren explained his statement. He said that his remark about not having a file related only to a "particular document in question" and that this document did not "pertain to . . . [his] client."[1] The record of trial does not support the charge of inadequacy of counsel.

We have examined all the other claims of error and have read the record of trial with care. With two exceptions which we will discuss presently, we find no error or circumstance prejudicial to any substantial right of any accused.

Three of the accused were charged with possession of false identification

---

[1] Mr. Warren's statement in full is as follows:

"If the court please, before we start the morning's business, I should like to—I have a little explanation which I wish to make concerning the apparent acrimony between the law officer and myself yesterday concerning whether or not I was prepared in the case. I remember somewhere during my argument that I made some statement to the effect that I did not have a file in front of me to compare these things. I feel the law officer misunderstood me and thought I said prepare. As a matter of fact, I did have a file which was somewhat stripped but the documents pertaining to my particular client and as you see, I have in my hand here, up to 23 witnesses of which I made notes. I was prepared. I don't want the record to reflect that I never at any time indicated that I believe I was not prepared. I was prepared to try this case. I was not prepared on this particular document in question because I had never seen it. It did not pertain to my client and in that respect there was no reason for me to have seen it."

cards, with the intent to defraud in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The law officer gave instructions on the essential elements of a violation of Article 134 but only as these were related to other acts alleged in different specifications as violations of the Article. There are no instructions on the possession offenses as such. The general instructions were insufficient to apprise the court-martial of the essential elements of the possession offense. Cf. United States v Flood, 2 USCMA 183, 188, 7 CMR 59. Consequently, the findings of guilty of these charges must be set aside.

The second matter requiring corrective action concerns the validity of the sentence. At trial, the law officer instructed the court-martial that no separate punishment was authorized for larceny and the presentation of false claims. United States v Rosen, 9 USCMA 175, 25 CMR 437. The other offenses were considered separate for sentence purposes. In this, the law officer erred.

Childress and Cador were at Camp Hardy on March 17, 1959. Both were dressed in the uniform of a naval officer. Each represented himself to the finance clerk to be a naval officer and submitted a request for pay, with supporting documents, indicating he was assigned to temporary duty with the Naval Air Facility at Oppama, Japan. The amounts of the requests were unusually large for "casual pay," i. e., pay for a person on leave or temporary duty, so the finance officer decided to "talk to the two men." After some conversation, he asked Cador for his service number. Cador "stumbled and struggled" and appeared to be "acting like he was nervous." His conduct aroused suspicion. A call was placed by finance personnel to Oppama to check the "identification" of the purported officers. No satisfactory identification was obtained, and the air police were called. The accused, accompanied by two police officers, were then transported by police vehicle to the disbursing office of the Naval facility at Oppama. The latter had been alerted to the accused's coming. At Oppama, the accused again presented the requests for pay, with their supporting credentials. While the requests were ostensibly being processed, two Naval Intelligence agents arrived. They took the accused into custody. The events at Camp Hardy were charged as attempted larceny; those at Oppama were alleged as a separate attempt. In our opinion, the circumstances compellingly indicate that both incidents were merely parts of a single, integrated transaction and represent but one offense. United States v Swigert, 8 USCMA 468, 24 CMR 278. It was error, therefore, to treat them as separate for punishment purposes.

The decision of the board of review as to the findings of guilty of specification 2, Charge IV, relating to Payne; specification 2, Charge V, relating to Cador; and specification 2, Charge V, relating to Childress, are set aside and those charges are ordered dismissed. The sentence as to all accused, except McCauley, is set aside and the record of trial is returned to The Judge Advocate General of the Navy for submission to the board of review for reconsideration of the sentence as to Payne, Childress, and Cador in the light of this opinion.

Judge FERGUSON concurs in the result.