**UNITED STATES**

v.

**Calvin R. JOHNSON, 385 82 1570,
Private First Class (E–2), U.S.
Marine Corps.**

**NMCM 87 1199.**

U.S. Navy–Marine Corps Court of
Military Review.

Sentence Adjudged 31 Dec. 1986.

Decided 15 Jan. 1988.

LCDR Robert J. Smith, JAGC, USN, Appellate Defense Counsel.

Capt Mark Foster, USMCR, Appellate Defense Counsel.

Maj F.F. Krider, USMC, Appellate Government Counsel.

Before BYRNE, C.J., and GLADIS and ALBERTSON, JJ.

ALBERTSON, Judge:

Appellant was tried by general court-martial with members for violating Articles 81, 112a, 121, 125, 128, and 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 912a, 921, 925, 928, and 934 respectively. After mixed pleas, appellant was found guilty of one specification

---

1. The third issue raised by appellant, that the Government failed to prove him guilty beyond a reasonable doubt for the wrongful use of marijuana as charged in the Specification under Charge I, is found to be without merit. The issue involves the credibility of the witnesses. Private A testified he saw appellant puff on the marijuana cigarette (R. 83 and 116). On the other hand, Lance Corporal Brown testified he could not see Lance Corporal Johnson (R. 142). Appellant testified that he only pretended to smoke the marijuana cigarette. We rely on *United States v. Bright*, 20 M.J. 661, 664 (N.M.C.M.R.1985):

 Since the responsibility for determining the accuracy and weight of the testimony and

---

each alleging violation of Articles 81, 112a, and 125, and two specifications alleging violation of Article 128. Appellant was sentenced to confinement for one year, to forfeit all pay and allowances, to be reduced to pay grade E–1, and to be discharged from the Naval Service with a bad-conduct discharge. The convening authority approved the sentence as adjudged.

■ Appellant raises three issues on appeal:

## I

CHARGE IV AND ADDITIONAL CHARGE II, BOTH ALLEGING ASSAULTS WHICH WERE PERPETRATED BY LANCE CORPORAL BELISLE, WERE NOT PROVEN BEYOND A REASONABLE DOUBT.

## II

ADDITIONAL CHARGE I, ALLEGING A CONSPIRACY TO COMMIT AN ASSAULT CONSUMMATED BY A BATTERY, WAS NOT PROVEN BEYOND A REASONABLE DOUBT.

## III

CHARGE I, ALLEGING WRONGFUL USE OF MARIJUANA, WAS NOT PROVEN BEYOND A REASONABLE DOUBT.

We shall discuss the first two assigned issues[1] and affirm the findings except those relating to Additional Charge I and its Specification which we dismiss.

 evidence, the relevant inferences to be drawn, the bias of the witnesses and the truth is that of the trier of fact who saw and heard the witnesses, the trial court determinations are worthy of due deference on review.... In performing its duty, the trier of fact may consider the personal interest which an accused has in the results of the trial and may believe or reject an accused's testimony in whole or in part....

 We find that sufficient evidence exists in the record to support the findings of guilty to Charge I and its specification. We too are satisfied beyond a reasonable doubt of the appellant's guilt of the Charge and Specification. Article 66(c), UCMJ.

On October 3, 1986, Private A, the victim of the alleged assaults, sodomy and conspiracy, left work and joined in a party with his fellow platoon members. During the party various platoon members talked about initiating Private A into the platoon. Much drinking occurred and because of the effects of the alcohol and a full day's work, the party broke up. Private A went to bed around 2200. About midnight, Private A testified, and we factually conclude that this is what occurred,[2] that he was awakened by Lance Corporal Brown and told to come to the head. He got out of his rack and took his sleeping bag with him because he was cold. When he and Lance Corporal Brown got to the head, Lance Corporal Belisle and the appellant were there too. At the time he was being escorted to the head by Lance Corporal Brown, Private A believed, although he had not been told, that he was going to be initiated into the platoon.

Without any evidence demonstrating any discussions about or conduct indicating initiations or any other intentions relating to the events that subsequently occurred, Lance Corporal Belisle suggested that they all move to the showers. They all complied. Once at the showers Lance Corporal Belisle told Private A to get in the shower and to take his clothes off. Both appellant and Lance Corporal Brown testified that their own individual, but unspoken, thought processes made each of them believe Lance Corporal Belisle was about to initiate Private A (R. 148, 178). They voluntarily went with Lance Corporal Belisle to the showers and remained and in some manner participated in the events that unfolded.

When Lance Corporal Belisle ordered Private A to take his clothes off, Private A refused. Lance Corporal Belisle got angry and again told him to take his clothes off. Private A did so. Then Lance Corporal Belisle told him to bend over; Private A refused but complied when Lance Corporal Belisle again got angry. The evidence here becomes somewhat contradictory. Private A testified that Lance Corporal Belisle left the shower area momentarily and when he returned he had a broomstick. Appellant and Lance Corporal Brown testified that the broomstick just appeared in Belisle's hand from nowhere. Lance Corporal Belisle then rubbed some shampoo on the end of the broomstick and inserted it in Private A's anus twice. Lance Corporal Brown and appellant testified they did not know Lance Corporal Belisle was going to do that. When Lance Corporal Belisle carried through with it, appellant was "surprised" (R. 179) and "shocked" (R. 188); Lance Corporal Brown was "awed." (R. 151). Neither Marine did anything to stop Lance Corporal Belisle. Testimony of Private A and Lance Corporal Brown corroborates appellant's testimony that he, the appellant, mouthed "run" to the victim several times during the assaults.

After these assaults, the trio and their victim moved to a toilet stall at victim's request. Lance Corporal Belisle then ordered the victim to perform fellatio on appellant. Appellant strenuously, but only verbally, objected but his objections were overcome by Lance Corporal Belisle's anger and the victim was required to perform

2. Lance Corporal Brown and appellant testified differently. Lance Corporal Brown, testifying under a grant of immunity, denied awakening Private A and escorting him to the head. The scenario described by Lance Corporal Brown went something like this. On cross-examination Lance Corporal Brown testified that he had heard various platoon members—of which appellant was not one—talking about initiating Private A. He became concerned about Private A and went with another Marine to see if Private A was all right. He was. He later went back alone to make sure and he and Private A talked about half an hour (R. 146). Then Lance Corporal Brown walked to his own barracks where he saw Lance Corporal Belisle and appel-lant talking and drinking beer (R. 16). Earlier, however, during direct examination, he had testified that he joined Private A, appellant and Lance Corporal Belisle in the quonset hut (R. 136); though on further cross-examination he indicated Private A joined them. Because others were sleeping and they were talking rather loudly, Lance Corporal Belisle suggested they move to the head so they would not disturb anyone. All four Marines moved to the head (R. 177). Appellant himself testified that Lance Corporal Belisle and he were talking in the barracks when they were joined first by Lance Corporal Brown and then a little later by Private A (R. 176–177).

fellatio on appellant. From the toilet stall they moved back to the shower area where Lance Corporal Belisle told Private A "to step back in the corner" whereupon Lance Corporal Belisle pulled out his belt and hit Private A. Both Lance Corporal Brown and appellant also hit the victim with the belt.

After marijuana use by the three initiators, the four then returned to the shower area and Lance Corporal Belisle told Private A to put his clothes back on and then to get in his sleeping bag. When Private A had done so, Lance Corporal Belisle tied the ends of the sleeping bag to the shower post and turned on the shower. Appellant also turned the shower on. After a few minutes, Lance Corporal Belisle let Private A out of the shower, and congratulated him on "being an 81, gave him a beer, and everyone [shook] hands." (R. 157). Then, Private A apparently said something that angered Lance Corporal Belisle and this led to another assault consummated by a battery.

## I

■ We address the second assigned issue, *i.e.*, whether a conspiracy was proven, first to allow logical development of our opinion. Article 81, UCMJ, holds serviceprsons liable for conspiracy when two or more persons agree to commit an offense under the Code if one or more of the co-conspirators does an act to effect the object of the conspiracy. *United States v. Kidd*, 13 U.S.C.M.A. 184, 32 C.M.R. 184 (1962). The very heart of the offense of conspiracy is the agreement. *United States v. Nathan*, 12 U.S.C.M.A. 398, 30 C.M.R. 398 (1961). While it is well recognized that an agreement may be established tacitly, *United States v. Matias*, 25 M.J. 356 (C.M. A.1987); *United States v. Graalum*, 19 C.M.R. 667 (A.B.R.1955), *pet. denied*, 19

C.M.R. 413 (C.M.A.1955), some evidence must be presented by the Government to show the establishment of such a tacit agreement. Military and federal case law tells us that an agreement can be proven by an inference from all of the facts appearing in evidence[3] including not only facts relating to events that occurred subsequent to the time the agreement is alleged to have come into existence,[4] but also by evidence of the substantive facts themselves. *United States v. Payne*, 12 U.S.C. M.A. 455, 31 C.M.R. 41 (1961). And, "[o]nce a conspiracy is established, the act of one is the act of all." *United States v. Rhodes*, 11 U.S.C.M.A. 735, 29 C.M.R. 551, 558 (1960); paragraph 5c(5), MCM, 1984.

Our problem in the case at bar is that in considering the evidence in the light most favorable to the Government, as we are required to do, *United States v. Bright*, 20 M.J. 661 (N.M.C.M.R.1985), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), *reh'g denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), we must ask ourselves whether sufficient evidence exists in the record, as a matter of law, for us to find the existence of an agreement, even tacitly, to commit an assault consummated by a battery on the victim or, in the alleged co-conspirators' terms, "to initiate" Private A.

■ All testimony of record indicates that no discussion was ever had amongst the trio, or between the victim and the trio, to establish a common plan or scheme amounting to an agreement to "initiate" the victim. Sufficient evidence of record does exist, however, to establish a tacit agreement, a meeting of the minds. Lance Corporal Brown, though denying that he ever discussed initiating Private A with anyone, did testify that he figured they were going to initiate Private A when

---

3. *United States v. Rhodes*, 11 U.S.C.M.A. 735, 29 C.M.R. 551 (1960); *United States v. McCauley*, 30 C.M.R. 687 (N.B.R.1960), *aff'd in relevant part sub nom. Payne*, 12 U.S.C.M.A. 455, 31 C.M.R. 41 (1961); *United States v. Battaglia*, 394 F.2d 304 (7th Cir.1968); *United States v. Aiken*, 373 F.2d 294 (2d Cir.1967), *cert. denied*, 389 U.S. 833, 88 S.Ct. 32, 19 L.Ed.2d 93 (1967), 389 U.S.

1043, 88 S.Ct. 786, 19 L.Ed.2d 835 (1968); *Sigers v. United States*, 321 F.2d 843 (5th Cir.1963).

4. *United States v. Glasser*, 116 F.2d 690 (7th Cir.1940), *rev'd on other grounds* as to one of three defendants, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), *reh'g denied for codefendants*, 315 U.S. 827, 62 S.Ct. 629, 86 L.Ed. 1222 (1942).

Lance Corporal Belisle told Private A to go to the showers. Appellant testified, presumably in his own self-interest, that he never participated in any discussions about initiating Private A though he admitted that he believed that is what Lance Corporal Belisle was intending when he ordered Private A to the showers. Both testified that Private A voluntarily joined them in the head or quonset hut and Lance Corporal Belisle took it from there. Private A even testified he thought he was going to be initiated. Lance Corporal Belisle, the principal perpetrator, never testified. The evidence certainly shows beyond any reasonable doubt that a conspiracy existed, at the very least, from the point the trio and their victim were in the head and agreed to move to the showers, and we so find.

■ Under the UCMJ, the Government must also prove that an overt act was done to effectuate the object of the conspiracy. *United States v. Kidd, supra.* In fact, precedent for that conclusion is based on Supreme Court decisions interpreting a federal criminal statute very similar to Article 81, UCMJ. *United States v. Britton,* 108 U.S. 199, 2 S.Ct. 531, 27 L.Ed. 698 (1883); *Hyde v. United States,* 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912).

> The conspiracy, therefore, cannot alone constitute the offense. It needs the addition of the overt act. Such act is something more, therefore, than evidence of a conspiracy. It constitutes the execution or part execution of the conspiracy, and all incur guilt by it, or rather complete their guilt by it....
>
> . . . . .
>
> [I]t may be admitted that the act must have the conspiracy within view and have some power to effect it.

*Id.* at 360, 32 S.Ct. at 799, 56 L.Ed. at 1123. The reason for requiring proof of an overt act was to afford *locus penitentiae,* so that before the act is done, either one or all of the parties may abandon their design, and thus avoid the penalty prescribed.... *United States v. Britton, supra* 108 U.S. at 204–205, 2 S.Ct. at 534, 27 L.Ed. at 700. We conclude from these precedents therefore that (1) proof of the existence of a conspiracy or agreement is required before the occurrence of any overt act takes on any criminal significance; and (2) an overt act in compliance with the conspiracy already formed must be committed in furtherance of the object of the conspiracy. In other words, to be guilty of a conspiracy, an agreement must first be formed and then an overt act must be committed which is in furtherance of the object of the agreement.

While overt acts need not be criminal acts, they must be acts committed for the purpose of effectuating the object of the conspiracy. Additional Charge I and its specification, to which this assigned error relates, alleges the overt act as "Lance Corporal Brown awakened Private R.M. [A], U.S. Marine Corps, and escorted him into the head where Lance Corporal Belisle and Private First Class Johnson were waiting."

Again, we find the following as facts: (1) the victim was awakened and taken to the head by Lance Corporal Brown, (2) appellant and Lance Corporal Belisle were in the head when Lance Corporal Brown and Private A got to the head, and (3) the appellant, Lance Corporals Brown and Belisle joined forces to initiate the victim. Even though we find that Lance Corporal Brown did awaken and escort Private A to the head, we still must find that evidence exists in the record to show that such an act was the result of an agreement to initiate Private A and was in furtherance of the object of the conspiracy.

■ As the law permits us to consider subsequent acts and conduct to show the existence of a prior agreement, and since we find the subsequent batteries and sodomy committed against Private A by the trio are consistent with the rite of initiation as described by Lance Corporal Brown and appellant, we also infer that Lance Corporal Brown's awakening and escorting Private A to the head was an overt act necessary to the completion of the object of the conspiracy.

We have thus found the existence of a conspiracy (by tacit agreement) among the

trio to initiate Private A and we have found the commission of an overt act in furtherance of the object of that agreement. But, two other critical questions must still be resolved: when did appellant join the agreement and is the appellant liable for the overt act committed by Lance Corporal Brown?

■ While we believe the evidence is sufficient for a trier of fact to find that Lance Corporal Brown agreed to commit an assault and battery upon Private A prior to his carrying out the overt act of awakening and escorting Private A to the head, we find insufficient evidence to conclude, as a matter of law, that a trier of fact could arrive at that same conclusion with respect to the appellant. Further, although we are convinced that appellant joined the conspiracy by tacit agreement at the time the trio was in the head with the victim, we are not convinced beyond a reasonable doubt that appellant was a party to the agreement prior to the commission of the overt act alleged. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

Whether appellant can be held responsible for the conspiracy alleged now depends on the resolution of a legal issue: When an accused joins a conspiracy *after* the occurrence of an overt act, and the objectives of the conspiracy are accomplished, is the overt act which occurred prior to his joining the conspiracy attributable to him?

■ We hold that the overt act must occur after the appellant joined the conspiracy and that he cannot be held criminally liable for any acts that occurred prior to his joining the conspiracy.

The Air Force Court of Military Review in *United States v. Kinder,* 14 C.M.R. 742 at 780 (A.F.B.R.1954), said:

> The law is settled that one need not share in the original formation of the conspiracy, but if he joins the conspiracy after its formation and prior to its consummation with knowledge of the agreement or assent of minds between the original parties to accomplish by concerted action an unlawful purpose *and* commits an overt act to effect the unlawful

purpose of the conspiracy, he is guilty as a co-conspirator.

(Citations omitted; emphasis added.) Six years later in *United States v. McCauley,* 30 C.M.R. 692 (N.B.R.1960), *aff'd in relevant part sub nom. Payne,* 12 U.S.C.M.A. 455, 31 C.M.R. 41 (1961) (reviewed by the Court of Military Appeals on other issues), this Court, quoting a federal district court opinion, stated: " 'A party who joins an existing group of conspirators already engaged in carrying on the conspiracy assumes responsibility for all that has been done theretofore.' " This implies that the newly joined co-conspirator is inextricably committed to the crime of conspiracy if an overt act had been previously committed by one of the co-conspirators. Furthermore, the *McCauley* position appears to have been accepted by some of the same federal courts cited in the *Kinder* opinion, *e.g., Marino v. United States,* 91 F.2d 691, 696 (9th Cir.1937); *Baker v. United States,* 21 F.2d 903, 905 (4th Cir.1927). Yet, when we consider the reason for making conspiracy a punishable offense (the increased danger created by combinations of people) and the reason behind the defense of withdrawal (it permits the individual an opportunity to recognize the error of his ways before becoming fully committed), the principle stated by this Court in *McCauley* appears to lack a logical foundation.

For instance, withdrawal is effective only if it is done prior to the commission of an overt act in furtherance of the object of the conspiracy. Therefore, if one joins an existing conspiracy after the commission of an overt act in furtherance of a conspiracy and is liable for all that occurred prior to his joining the conspiracy, he subjects himself to strict criminal liability the moment he enters into an agreement with the other members of the conspiracy. This principle of strict liability is a reversion to the common law tradition long ago rejected by federal criminal statutes and the UCMJ. While we accept the fact that the military need not reject the common law theory of what constitutes liability for the offense of conspiracy and can instead adopt a principle that holds an individual more accounta-

ble for his actions when he is contemplating joining an already existing conspiracy, a clearer statement of that adoption is needed from those responsible for making the law before we could conclude that such increased accountability was, in fact, intended. It is true that the 1951 and 1969 Manual provisions can be interpreted as having adopted that concept. On the other hand, the case law developed by the military appellate courts interpreting those provisions is not entirely that helpful in arriving at such an interpretation since the overt act alleged in those cases appears always to have occurred subsequent to or simultaneously with the agreement, or, the overt act alleged was, in fact, the commission of the crime that was the object of the conspiracy, *e.g.*, *Kinder* and *McCauley*, *both supra*. Additionally, those courts appear to reach differing conclusions on the principle involved, *Kinder* apparently requiring the newly joined conspirator *himself* to commit an overt act before he could be held liable and *McCauley* holding him liable the moment he joins the conspiracy if an overt act had been previously committed by other members of the conspiracy. The President, however, rejected this Court's holding in *McCauley* and adopted a slightly modified *Kinder* principle: "The conspirator who joined an existing conspiracy can be convicted of this offense *only if, at or after the time of joining the conspiracy, an overt act* in furtherance of the object of the agreement *is committed.*" Paragraph 5c(1), Part IV, MCM, 1984 (Emphasis added).[5]

■ The Manual provision being contrary to dicta rendered by this Court requires us to address the issue of whether we are bound to follow the Manual's statement. Article 36, UCMJ, 10 U.S.C. § 836, authorizes the President to prescribe procedural rules for courts-martial. We must follow the paragraph 5(c) statement if it is a procedural rule. We find, however, that it is not procedural but substantive. We base our finding on the fact that Article 81, UCMJ, includes the overt act as part of the definition of the offense of conspiracy. The overt act is one of two elements of the offense, and elements are substantive issues. Whether an accused may be held criminally liable for the overt act alleged is a substantive issue. Accordingly, it is the Court's responsibility to interpret substantive matters and the President's statements in the Manual on such matters are merely guidelines for practitioners which the Court may reject or accept depending upon its interpretation of the substantive law. *United States v. Ware*, 1 M.J. 282 (C.M.A. 1976). Therefore, we are not bound to follow the statement set forth in paragraph 5(c), quoted above.

On the other hand, because we believe the *McCauley* statement lacks logical foundation, we hold that a conspirator who joins an existing conspiracy can be convicted of the offense of conspiracy only if, at or after the time he joins the conspiracy, an overt act in furtherance of the object of the agreement is committed. Thus, we reject the *McCauley* dicta insofar as it is contrary to this principle of law.

■ Had we the old dicta to apply, we could infer criminal liability based upon the acts of the appellant that occurred subsequent to the commission of the overt act alleged. Such a finding by inference is not possible under the guidelines espoused by the 1984 Manual for Courts–Martial and our holding today because that would require us to accept the concept of strict criminal liability for the joining party of an already existing conspiracy, a concept we reject. Since we are not convinced beyond a reasonable doubt that the appellant was a party to the agreement prior to the commission of the overt act alleged, we cannot hold him criminally liable for the offense of conspiracy as alleged.[6]

---

5. The *Analysis* to this paragraph cites *United States v. Kinder, supra,* as the source for the proposition.

6. The military judge did not instruct the court members—nor did trial and defense counsel address the issue to the trial court—about the

significance of the timing relationship between the overt act and the appellant's becoming a co-conspirator. We cannot presume, then, that the court members correctly applied the facts to the law as we find it existed at the time of the alleged commission of the offense. *See United*

## II

 The findings of guilty to the assaults alleged in Charge IV and Additional Charge II are sufficiently supported by the evidence in the record, particularly under the co-conspirator theory. For this first assignment of error, we find, as previously stated, that appellant joined the conspiracy at that point in time when in the appellant's presence Lance Corporal Belisle told Private A to get in the shower and take his clothes off. This is based on appellant having heard Lance Corporal Brown's conversation with the victim [7] and appellant's own testimony of what he saw and thought at the time.[8] As stated in *United States v. Graalum*, 19 C.M.R. 667, 697 (A.B.R.1955), *pet. denied*, 19 C.M.R. 413 (C.M.A.1955):

> In considering whether or not the evidence establishes the "agreement" element of the conspiracy, it should be borne in mind that the agreement need not be in any particular form nor manifested in any formal words, but is made out if it is shown that the minds of the parties thereto arrived at a common

understanding to accomplish, by concerted action, the object of the conspiracy.... The agreement element of the conspiracy may be shown by conduct of the alleged co-conspirators, their declaration to or in the presence of each other, and other circumstantial evidence....

*United States v. Jackson*, 20 M.J. 68 (C.M.A.1985). And, as stated in paragraph 5c(2), Part IV, Manual for Courts–Martial, United States, 1984 (MCM): "The agreement need not state the means by which the conspiracy is to be accomplished or what part each conspirator is to play." In the instant case, Lance Corporal Brown's discussion with Private A in the presence of appellant and appellant's own understanding of the situation at the time Lance Corporal Belisle told Private A to get in the shower, establish the element of agreement, *i.e.*, the agreement to initiate Private A into the platoon. The acts of initiation, as generally described by Lance Corporal Brown and appellant, included at the very least assault consummated by a battery.[9]

*States v. Jackson*, 6 M.J. 116 (C.M.A.1979); *United States v. Verdi*, 5 M.J. 330 (C.M.A.1978); *United States v. Graves*, 1 M.J. 50 (C.M.A.1975). Therefore, we never reach the question of whether sufficient evidence exists in the record for a rational trier of fact to base its findings that appellant was part of an agreement that existed prior to the occurrence of the alleged and proven overt act.

7. (R. 149.)

Q. What were you [and Private A] talking about?
A. About initiations, about what I had gone through and what everybody else had gone through. And it was just letting him know—you know, he was curious of what was going on. I said "I'm as much up in the air about it as you, but it's probably initiations."

8. (R. 178.)

Q. So, after you got over toward the shower room, what happened?
A. Lance Corporal Belisle asked Private [A]—or told Private A to take off his clothes.
Q. What did you think at this point?
A. I thought he was going to get thrown into the shower. Right now I figured it was going to be his initiation.

9. (R. 188.)

Q. And when Belisle was forcing [A] to take his clothes off, you didn't try to stop him from doing that, did you?

A. That was routine, sir, for initiation, I believe, sir.
Q. And you didn't leave during that period either, did you?
A. No, I didn't, sir.
Q. Now, when Belisle told [A] to bend over in the shower room there, you didn't try to stop him from doing that, did you?
A. No, I didn't, sir.
Q. And, you didn't leave then either, did you?
A. No, I didn't, sir.
Q. Now, when Belisle had the stick in his hand and he put it up along [A]'s anus, you didn't try to stop him at that point, did you?
A. No, I didn't sir.
Q. And you didn't leave either, did you?
A. I was shocked at what was going on, sir.
Q. But you didn't leave, did you?
A. No, sir.

* * * * * *

(R. 192.)

Q. Have you been initiated?
A. Yes, I have, sir.

* * * * * *

Q. What did it consist of? Explain.
MJ: Excuse me. We're not going to listen to a litany of the accused's initiation. Are we to understand that you were involved in a shower scene; is that it?
WITNESS: Yes, sir.
MJ: Very well.
WITNESS: Also, sir, I was hit with a belt and I was hit in the stomach with slapping mo-

Moreover, "[e]ach conspirator is liable for all offenses committed pursuant to the conspiracy by any of the co-conspirators while the conspiracy continues and the person remains a party to it." Paragraph 5c(5), MCM, 1984; *United States v. Herrick*, 12 M.J. 858 (A.F.C.M.R.1981). Accordingly, appellant's conduct at the scene of the "initiation," his admitted recognition of the situation at the time that this rite was about to occur, his leaving the scene momentarily to get a beer and returning, hitting the victim with the belt twice, turning the shower on the victim, and permitting the act of sodomy on his person, as well as his watching and failing to leave or prevent Lance Corporal Belisle's pushing and punching of Private A and inserting the broomstick in the anus of Private A, makes him liable for all of the criminal acts that occurred during the continuation of the conspiracy. At no time did appellant act in any manner that would constitute his withdrawal from the conspiracy. He never told Lance Corporal Belisle and Lance Corporal Brown that he would no longer participate in their conduct and that they should no longer expect him to participate or acquiesce in their conduct. Nor did he report the conduct to law enforcement authorities; in fact, he asked Private A not to tell anyone. Nor did he participate in any affirmative acts that were inconsistent with the object of the conspiracy which would in turn communicate to his co-conspirators a reasonable understanding that he was no longer a part of the conspiracy. Paragraph 5c(6), Part IV, MCM, 1984; *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).

Thus, while appellant may not have been the principal in the pushing and punching of Private A as alleged in the Specification under Charge IV or the insertion of the broomstick in Private A's anus as alleged in the Specification under Additional Charge II, we find he was liable for those batteries under the co-conspirator liability theory:

> Every member of a conspiracy is responsible for acts done by his confederates which follow incidentally as one of the probable and natural consequences in the execution of the common design, even though such a consequence was not intended as a part of the original design or plan.

*United States v. Salisbury*, 14 U.S.C.M.A. 171, 175, 33 C.M.R. 383, 387 (1963). Appellant admits that he was present, and that he neither abandoned the effort nor strenuously objected to the events as they subsequently occurred. He also admits that he could have withdrawn had he not been subjected to what this Court finds as "peer pressure" vice duress. We disagree with appellant when he says that pushing and punching plus insertion of the broomstick were offenses that could not have been reasonably foreseeable as a material consequence of such an agreement. The testimony of both Lance Corporal Brown and appellant amply indicate that appellant saw the dangers of what was to come from Lance Corporal Belisle's actions. In fact appellant's understanding was so complete that he several times mouthed to Private A that he should run. Additionally, appellant had sufficient opportunity over the course of events as they were occurring to stop Lance Corporal Belisle or leave the scene of the events. Instead, he stood and watched, left to get beer and returned, and eventually directly participated in the events. Accordingly, we find the assaults consummated by the batteries to be reasonably foreseeable as natural consequences of the agreement. We also find that he is liable as an aider and abettor to the offenses. Therefore, we find that the Government did prove beyond a reasonable doubt the assaults alleged in Charge IV and Additional Charge II and for which the appellant was found guilty.

tions to my stomach which is called "pink belly," sir.

Accordingly, only the findings of guilty to Charges I, II, III, IV and Additional Charge II and their specifications are affirmed as correct in law and fact. Additional Charge I and its Specification are dismissed. Upon reassessment, the sentence is affirmed.

Chief Judge BYRNE and Judge GLADIS concur.